CRAIN, Judge.
This is a workmen’s compensation proceeding brought on behalf of plaintiff, Raleigh Ordoyne, against the defendant, Fred Wilson Drilling Company, Inc., for total and permanent disability benefits under the workmen’s compensation act. The Trial Court rendered judgment in favor of the plaintiff and defendant appealed.
The accident is not in dispute. The record reveals that the plaintiff was injured when a steel cable struck him on the neck and shoulder on or about June 24, 1969. Plaintiff was off work for approximately five or six weeks after the accident, during which time he received full compensa *83 tion and during which time his medical bills were paid. He attempted to return to work on August 7, 1969 but was unable to continue in his employment because of alleged pain suffered as result of his injuries. Compensation benefits were not paid after August 4, 1969. The Trial Court awarded plaintiff total and permanent disability benefits of Forty-five and no/100 ($45.00) Dollars per week for 400 weeks. Further, the Trial Court assessed penalties, interest and attorney’s fees in the amount of Twenty-five Hundred and no/100 ($2500.00) Dollars against the defendant for wrongful refusal to pay.
The record reveals that prior to the accident the plaintiff was employed with Wilson Drilling Company as a roughneck. The plaintiff testified that after the accident, and after having received medical treatment, he attempted to return to work, but was unable to engage in heavy lifting because his neck would get stiff and sore. Also his reflexes were noticeably slowed as result of the injuries sustained in the accident.
When an employee is unable to return to his former occupation because he is unable to perform the duties required of him due to the fact that he experiences substantial pain while so engaged, he is entitled to permanent and total disability benefits under the workmen’s compensation act. In determining the factual question regarding the employee’s pain and suffering, we must first look to the medical evidence produced at the trial. In this case the plaintiff saw five physicians, Dr. Cale-caus, a general practitioner, Dr. Richard Warren Levy, a neurosurgeon, Dr. John Kenneth Saer, an orthopedic surgeon, Dr. Stuart Phillips, a general surgeon, and Dr. William Fisher, a general surgeon. He also went to Mr. Leslie J. Daigle, a physical therapist for therapy. None of the eminent physicians who treated or examined plaintiff after he attempted to return to work on August 7, 1969 could find any evidence of physical injury to support the plaintiff’s subjective complaints of pain and stiffness.
After the accident, plaintiff saw Dr. Calecaus, a local physician in the Thibo-daux area and Dr. Calecaus initially diagnosed his condition as a cervical strain. He was referred to Mr. Leslie J. Daigle, a physio-therapist. Mr. Daigle testified that he treated the plaintiff on several occasions using hydrocolator packs, ultra sound and therapeutic exercises. He last treated the plaintiff on July 23, 1969 and stated that he complained of “some discomfort with rotating”; however, there were no objective signs to support the plaintiff’s complaints.
Dr. Stuart Phillips examined the plaintiff in July and September of 1969. In his report dated September 16, 1969 he expressed his opinion that the plaintiff was capable of resuming his routine in returning to his ordinary laboring activities, and he released the plaintiff from his care.
Dr. William Levy examined the plaintiff on January 21, 1970 and stated that he was of the opinion from a neurological standpoint that the plaintiff was not disabled from performing heavy or any type of labor.
On October 6, 1970 plaintiff saw two doctors, Dr. William Fisher and Dr. John Kenneth Saer. To Dr. Saer the plaintiff complained of pain and discomfort in the trapezius muscle while to Dr. Fisher the plaintiff complained of pain in the sterno-cledimastoid muscle. Neither doctor could make any objective findings at all to support the plaintiff’s subjective complaints. Dr. Saer testified during his deposition as follows:
“Q. Not necessarily. Doctor, you state in your report, I do not think that there is medical treatment that is going to affect this patient’s course of progress.
A. Yes, sii\
*84 Q. It is my opinion that he is capable of returning to any type of activity of which he was formerly capable.
A. Yes sir.
Q. Do I take your report to mean, Doctor — am I correct, rather, Doctor, in taking your report to mean that you do not feel that this patient has any medical injury at all ?
A. I mean it only to say that I am unable to see any evidence at this time of a residual of injury; that there is nothing that I could find that is abnormal at this time.
Q. Do you think that Mr. Ordoyne is lying about his subjective symptoms of pain?
A. I don’t know. I just don’t know. He may or may not be. I can’t answer that.
Q. Are you willing to state that he is lying?
A. No, sir.
Q. Not being willing to state that he is lying about his pain, why are you willing to send him back to work without further treatment for his pain?
A. For two reasons. First of all, I do not think that there is any treatment that is going to make a bit of difference to him. There is nothing as a doctor, certainly, that I can do that would improve his status.
The second part of the question. In my opinion, anybody that does not have something that one can see, at least on clinical or x-ray examination, anybody who is normal to examination as he is is capable of working. I feel quite certain he is capable of working. He may or may not have some discomfort. Many people have discomfort, and people do work all the time with some discomfort. The fact that any discomfort he may have, in the absence of any findings on examination, would in my opinion, be a relatively minor discomfort, if in fact there is some. I think that any person with any motivation, with average motivation or any type of motivation at all, would be capable of doing anything he wanted to do with this situation.”
Later on during his deposition, Dr. Saer stated:
“A. I would say there is no medical contraindication whatsoever for this patient to do heavy work. If he doesn’t want to do it, for some reason or another — I have no idea if he does or not, or what the reason may be — if he does not want to do that, then one might be well advised to tell him that he do something else that he wants to do. I feel it is motivation because, in this case, it limits his return to heavy work because, from the point of view of the musculo-skeletal system, there is no reason at all in not doing the work he wants to do. I feel confident in making that statement.”
Dr. Fisher is the only examining physician who, at the time of the trial, would recommend further treatment. His recommendation is based not on physical findings, but the fact that he would treat plaintiff according to his complaints just to see if the complaints might then cease.
Regarding the lay testimony, it is significant to note that the plaintiff himself testified simply that he was experiencing stiffness when he was required to perform certain work. Plaintiff failed to produce any coworkers and witnesses to testify to the pain and suffering he purported!y experienced, although he testified he has worked with and around numerous people since his injury.
*85 This Court is unable to find suf-ficent evidence in the record to support the Trial Court’s decision regarding total and permanent disability and therefore we must reverse the finding. Clevinger v. Continental Insurance Companies, La.App., 211 So.2d 718. Although plaintiff may have been suffering from residual discomfort, there is simply no evidence other than his own testimony to show substantial pain. Residual discomfort must be substantiated to be compensable. Jackson v. American Mutual Liability Insurance Co., La.App., 242 So.2d 903.
Because of our findings, it is unnecessary for us to pass on the questions regarding defendant-appellants motion to remand. Also, necessarily, the Trial Court’s award of penalties and attorneys fees is reversed.
Reversed and rendered.