JULIAN E. BAILES, Judge Pro Tem.
Plaintiff-appellant, William H. Ridley, Jr., sued defendant, the workmen’s compensation insurance carrier of his former employer, for workmen’s compensation benefits, including statutory penalties and attorney’s fees due for disability which allegedly continued past November 30, 1972, this being the date the treating physician concluded plaintiff was able to return to work.
The trial court found plaintiff had failed to prove by a preponderance of the evidence that he suffered disability past November 30, 1972, and rejected his demands. We find no error in this judgment, and accordingly, we affirm.
The record clearly establishes the following facts and conclusions. Plaintiff was employed as a laborer for Thompson Packing Company, Inc. His work consisted of killing, bleeding, skinning and cutting off the heads of beeves processed by the employer. On June 28, 1972, while performing the duties required of him, a beef or steer fell from its hanging position striking plaintiff on the right knee and leg. His leg became swollen. The following day he went to the Reiger Clinic and shortly thereafter he was referred to Dr. Kenneth C. Cranor, an orthopedist in Baton Rouge for treatment. He was under treatment of Dr. Cranor from July 6, 1972, until released to return to work on November 30, 1972.
In his deposition Dr. Cranor testified that he first attempted conservative correction of plaintiff’s knee injury, however this type treatment gave way to surgical intervention. On August 28, 1972, he performed an arthrotomy on plaintiff’s knee and removed the medial meniscus. He testified plaintiff had recovered from his injury and was discharged to work on November 30, 1972. By reason of the operation, Dr. Cranor assigned a disability of 15 per cent to the knee which, according to this physician, did not incapacitate him from performing the duties of his former work assignment as this type assignment of disability is not functionally related.
Dr. Cranor testified that as early as October 23, 1972, he considered plaintiff a candidate to return to work, however because his work required him to work in a squatting position for prolonged periods of time, he would have to alter his mode of squatting until he regained good use of the knee, such as kneeling on bis knee through use of a pad. He stated he knew of no anatomical reason why plaintiff would not regain full use of his knee.
The following excerpt of his testimony is pertinent:
Q. “In your opinion there was no mechanical finding or no objective finding that made you think that he would not be able to do that in the future ?
A. “I went over this man’s knee many times postoperatively, and except for muscle atrophy, which I thought he could correct by exercise, I did not find anything that was of significance as far as persistent pathology was concerned. The usual post-ar-throtomy type things were present, but nothing that I considered a complication and he did not deviate as far as other findings were concerned from what was a good post-arthrotomy course.”
The treating physician, as well as all the other doctors who examined plaintiff found atrophy of three-fourths of an inch of the thigh. All agree that this atrophy is due to the lack of use of the leg after the operation. It appears from the record that *128 plaintiff is not using; his leg in a normal manner. He walks with a cane or crutch and he has not exercised the limb as he has been advised to do.
Plaintiff was examined March 13, 1973, by Dr. Charles S. Kennon; by Dr. James Thomas Kilroy on July 18, 1973, and by Dr. G. Gernon Brown, Jr., on November 30, 1972, May 16, 1973, and the last time on September 7, 1973.
Both Dr. Kennon and Dr. Kilroy, although their examinations of plaintiff were about four months apart, found atrophy of the thigh muscle and ascribed a 15 per cent disability to the knee. Dr. Ken-non testified that plaintiff could bear weight, bend and stoop and that exercise would reduce the atrophy. Dr. Kilroy believed that active use of the leg would act as a therapy. Additionally, he made these findings: (1) That plaintiff could definitely return to his duties; (2) That plaintiff was malingering and not being honest in his appraisal of pain; (3) That there was no evidence to justify the pain plaintiff was complaining of; (4) That plaintiff’s atrophy was due to non-use of his leg; (5) That it was possible the pain plaintiff was in fact experiencing was a result of the atrophy caused by non-use; and (6) That any functional disability plaintiff had was because of the atrophy caused by non-use.
Of the three examinations by Dr. Brown, he testified to the following:
First examination: Atrophy of one-half inch of thigh, crepitus of the knee on motion, and found a 35 per cent impairment of the right knee, as distinguished from disability;
Second examination: Same as first examination, except he found a 30 per cent impairment of the knee;
Third examination: Same as first two examinations and the impairment rating remained between 30 and 35 per cent. His conclusion was that the atrophy was attributable to the menisectomy and that plaintiff was unable to return to work because of the difficulty he would have in standing for long periods of time, and with stooping, squatting and walking. Dr. Brown was unable to assign any objective reasons to support his finding of disability.
After Dr. Brown’s first examination, the plaintiff returned to Dr. Cranor for six visits between December 4, 1972, and the concluding visit of February 19, 1973.
The testimony of Anita Jolivette, who lived with plaintiff, was admitted by the trial court because of the conflict in the medical evidence. She attested to plaintiff performing straight leg exercise in the mornings and that he had difficulty sleeping because of pain in his kneecap. There is nothing in her testimony that aids plaintiff in sustaining the burden of proof.
The plaintiff assigns two specifications of error of the trial judge. These are: (1) That defendant failed to prove that he was entitled to compensation benefits for a continuing disability past the date such compensation was terminated; and (2) That even if plaintiff was disabled beyond the date his compensation payments were discontinued, he was not entitled to further compensation because of his failure to engage in rehabilitative exercises. We will consider these in this order.
The medical testimony of all experts clearly establishes there are no objective findings to support the complaints of the plaintiff that he is disabled to function as a laborer.
It appears significant that plaintiff never returned to the job to attempt the performance of work. This demonstrates an unwillingness to test his ability to function in his work.
As we stated in Ordoyne v. Wilson, 262 So.2d 82 (La.App. 1st Cir. 1972), in considering whether a claimant’s alleged pain and suffering was disabling:
“[1] When an employee is unable to return to his occupation because he is unable to perform the duties required of *129 Him due to the fact that he experiences substantial pain while so engaged, he is entitled to permanent and total disability benefits under the workmen’s compensation act. In determining the factual question regarding the employee’s pain and suffering, we must first look to the medical evidence produced at the trial.
ifc * * * * *
“[2] Although plaintiff may have been suffering from residual discomfort, there is simply no evidence other than his own testimony to show substantial pain. Residual discomfort must be substantiated to be compensable. Jackson v. American Mutual Liability Insurance Co., La.App., 242 So.2d 903.”
Although plaintiff did see Dr. Cranor for six visits between December 4, 1972, and February 19, 1973, there was no finding on these visits which altered this doctor’s opinion that he was able to return to work as previously noted.
The trial judge stated that he was attaching greater weight to the diagnosis made by the treating physician than to the diagnosis and opinions of the physicians who saw plaintiff only for the purpose of testifying. This the trial court had the right to do if he was more impressed by the treating physician. See; Lindsay v. Lummus Company, 222 So.2d 549 (La. App. 4th Cir. 1969), and the authorities cited therein.
While plaintiff might have incurred some discomfort in returning to work, there is no showing that he would have, or was suffering, substantial disabling pain such as to classify him as permanently and totally disabled within the in-tendment of the workmen’s compensation statute and the jurisprudence.
Plaintiff relies on the holding in Futrell v. Hartford Accident & Indemnity Company, 276 So.2d 271 (La.1973), which involved the determination of disability of a skilled workman, whereas plaintiff herein is a common laborer.
As plaintiff is a common laborer, a different rule is applied as shown in Flowers v. E. M. Toussel Oil Company, 190 So.2d 147 (La.App. 4th Cir., 1966) writs denied, for therein the court held:
“Total disability for the common laborer is not determined by the same criteria used in the case of the skilled or semiskilled worker. As pointed out in Malone La.Work Comp. Sec. 375, the rule that the skilled or semiskilled worker is totally disabled when an accident causes the loss of physical faculties which had enabled him to earn his living in a particular trade or calling, even though he is still able to qualify for a job of a different nature, does not apply to the wholly unskilled or common laborer. The disability suffered by the common laborer must be evaluated in terms of its relative effect upon the victim’s ability to obtain work of any reasonable character, and not necessarily, the same type of work in which he was engaged at the time of the accident, in the flexible market for common laborers.”
In the instant case, the trial court made the following finding:
t( * * *
“Considering the medical evidence, lay testimony and the record as a whole in this case, it is the court’s opinion that plaintiff has failed to prove by a preponderance of the evidence that he is entitled to any compensation benefits beyond those already paid to him because of any continuing disability past the termination date of the aforementioned compensation payments.
« * * * ”
Now addressing the second specification of error, from our perusal of the record, the above findings of fact, the observation of the treating physician that from the first time he saw plaintiff he presented a hostile attitude toward treatment and maintained throughout the belief that he would *130 not recover, we agree with the trial court’s holding:
“The medical evidence in this case was unanimous to the effect that active and intense use of plaintiffs leg and knee would be rehabilitative. Therefore, any-continuing disability could only be attributed to plaintiffs failure to engage in the exercises which could have remedied any continuing functional impairment. # * *
Additionally, all the medical testimony supports the finding that if plaintiff had participated in the rehabilitative exercises the thigh muscles would have been restored to full size and strength or appreciatively improved.
We find no manifest error in the findings of the trial court, nor its judgment.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.