HOOD, Judge.
This is a workmen’s compensation suit instituted by Euell LaFleur, individually and in behalf of his wife, Mrs. Marie La-Fleur, against Savoy Hospital, Inc., and its insurer, The Travelers Insurance Company. The trial judge concluded that Mrs. La-Fleur is totally and permanently disabled, and he rendered judgment awarding plaintiff compensation benefits at the rate of $35.00 per week for 400 weeks. Defendants have appealed.
Workmen’s compensation payments were made to Mrs. LaFleur from the date of the accident through March 12, 1969. The principal issue presented here is whether she has been disabled as a result of a work-connected accident since the last mentioned date.
Mrs. LaFleur, a 51-year-old relatively uneducated person, was working as a maid for Savoy Hospital on November 6, 1968. When she started work on that date she and a co-worker (who did not testify) lifted a bucket or small tub of water (weighing 10-15 pounds) to a height of about eight inches off the floor, when she experienced a sharp pain in her back. The doctors who testified agreed that she sustained a mild *252 acute lumbosacral sprain as a result of the accident, and the evidence is uncontradicted that when this injury was sustained she had a pre-existing defect in her spine known as a spondylolisthesis, Grade I. The medical experts disagree, however, as to whether plaintiff has been disabled since March 12, 1969, or whether there is any causal relationship between the pain she complains of now and the above mentioned accident.
Plaintiff’s wife was treated by Dr. Frank Savoy, Jr., from the date of the accident until April 8, 1969. Dr. Savoy concluded that she had sustained a “lumbosacral sprain, pure and simple,” as a result of the accident. He found that at the time of the accident she had a pre-existing spondylo-listhesis, Grade I, and a generalized rheumatoid arthritis affecting all of her joints. He felt, however, that the sprain did not aggravate the spondylolisthesis or arithritic condition in any way, and that she had fully recovered and was able to return to work by the last time he saw her on April 8, 1969. He testified that objective signs of injury disappeared within one month after the accident occurred, that Mrs. La-Fleur “doesn’t have any disability as a result of this accident,” that he “felt that she was well enough to work at that time (April 8, 1969),” and that the “spondylolisthesis really has no connection with her back injury at all.”
Dr. Fred C. Webre, an orthopedic surgeon, examined Mrs. LaFleur on December 9, 1968, and again on August 29, 1969. On the first examination he found no objective signs of injury, but solely on the basis of her subjective complaints and the history she gave him he concluded that she had suffered a sprain of the low back area and that she was disabled. On the second examination, made about nine months after the accident occurred, he again found no objective signs which would substantiate her complaints of pain or disability, and he concluded that “she was more or less in the same situation as she was before she was injured.” He felt that she was able to return to her previous employment. Dr. Webre concedes that she may have backache due to her spondylolisthesis, but he feels that if she does it is a minor pain, and that she probably had the same type of backache before the accident but had not noticed it as much because her pre-existing back condition had not been called to her mind.
Dr. William Louis Meuleman, also an orthopedic surgeon, examined Mrs. La-Fleur at Dr. Savoy’s request, on February 17, 1969. He found no objective signs to substantiate her complaints of pain, and he concluded that “she had recovered to a point to where she could return to work.” He stated that “if she was experiencing pain you could hardly classify it as pain, you’d have to say a sense of awareness, maybe a discomfort at best.” The doctor described Mrs. LaFleur’s spinal defect as the “mildest sort of spondylolisthesis,” and he stated that everyone with that condition has episodes of mild backache which he ignores until he learns of the defect. He feels that ordinarily before a person becomes aware of the fact that he has a spon-dylolisthesis he attributes his backache to bending or exertion, but that afterwards he attributes it to the defect. The doctor is firm in his opinion that Mrs. LaFleur’s spondylolisthesis was not aggravated or made symptomatic by the mild back sprain which she sustained, and that she “is able to return to work as a maid sweeping and mopping floors, etc., without suffering substantial pain or discomfort.”
Finally, Mrs. LaFleur went to Dr. Roderick P. Perron, a general practitioner, on April 30, 1969, and she has been under his treatment since that time. Dr. Perron found no muscle spasm or other objective signs to substantiate her complaints of pain, other than a positive response to the straight leg raising test which he considered to be objective. He concluded that she probably had sustained “an acute lumbar sprain to her low back superimposed on a spondylolisthesis, and that this had gen *253 erally left her with a so called weak back, or her back that is prone to some pain and difficulties.” He felt that she was disabled permanently from performing the work she had been doing.
Dr. Perron feels that a person with a first degree spondylolisthesis may be asymptomatic until a minor trauma triggers off pain in the area, and that when such a trauma occurs the injuries become chronic and the symptoms become permanent. The doctor did not take x-rays of Mrs. LaFleur, and he did not examine those which had been taken. He was not aware of the fact that another doctor had found a pre-exist-ing condition of arthritis. He concedes that Mrs. LaFleur’s complaints of pain could be attributed solely to arthritis.
Plaintiff’s wife had worked as a maid for the defendant hospital for two years before the accident occurred. Her employment required her to work only four hours per day, five days per week, and her total income while working for the defendant hospital amounted to $25.00 per week. She claims and has been awarded compensation benefits at the rate of $35.00 per week, and defendants concede that under existing jurisprudence she is entitled to compensation at the maximum rate if she is entitled to recover at all. The fact that she will receive substantially more each week as compensation benefits than she would receive if she returned to her employment is immaterial, of course, except insofar as it shows that she has little, if any, incentive to recover from her injury and return to her employment.
Mrs. LaFleur has not been employed since the date of the accident. Several of her friends and neighbors testified that since the accident plaintiff’s wife has complained of pain and has not been as active as she was before. Mrs. LaFleur testified that she still suffers pain in her back, and she identified the spot as being on the spine at about the belt line. She stated that on some days the pain is worse than it is on others, and that she is unable to do some of her housework, such as washing clothes. She was hospitalized for four days beginning on the date of her injury, and she returned to the hospital briefly on November 29, 1968, to be fitted with a lumbosacral support. Such a support was prescribed for her by her treating physicians, and she stated that she has worn it almost daily since she obtained it.
The trial judge reasoned that since the medical evidence is in conflict, the lay testimony as to Mrs. LaFleur’s disability should be considered. He then concluded that “this woman is still disabled, even as of this date,” and that she thus is entitled to recover workmen’s compensation benefits at the maximum rate for 400 weeks.
We do not question Mrs. LaFleur’s testimony that she now suffers pain in her back. We think the evidence fails to show, however, that the pain is substantial enough to prevent her from working now, or that there is a causal relationship between the injury which she sustained on November 6, 1968, and the symptoms which she experiences at this time.
The medical evidence greatly preponderates to the effect that there is no connection between the accident and Mrs. La-Fleur’s present complaints of pain. Her original treating physician and the two orthopedic specialists who examined her relatively soon after the accident occurred testified to that effect. Dr. Perron, the only medical expert who expressed a different opinion, did not see Mrs. LaFleur until almost six months after the accident occurred. He did not take or examine any x-rays of her back, he found no objective signs of pain or disability, and he admittedly based his opinion solely on the complaints of and the history given to him by Mrs. LaFleur. He concedes that the pain which she allegedly suffers now could be caused by an arthritic condition which has no relationship to the accident, and which was not discovered by him prior to the trial.
*254 The evidence also fails to show that the pain which Mrs. LaFleur allegedly suffers is a substantial pain, or one which is disabling within the meaning of the workmen’s compensation law. The preponderance of the medical evidence is that any pain which she may have suffered after Dr. Savoy, her first treating physician, last saw her is a mild or minimal pain or discomfort which has not been disabling. Even Dr. Perron, the only physician who feels that she is disabled, expressed no opinion as to the severity of her pain, and he concedes that in the many examinations he has made of Mrs. LaFleur he has never found muscle spasm or atrophy, which signs should have appeared if the pain had been intense enough to be disabling.
Dr. Savoy, the first treating physician, testified that “ * * * you can be sure that if they are hurting without findings that their pain cannot be too severe, because any severe pain would, you know, give you some findings.” Dr. Meuleman said, “by no stretch of the imagination could I ever put that down as anything but a mild situation.” And, Dr. Webre stated, “I think, probably, the pain that this patient would have now, in returning to work now, would be the same type of pain or the same nature of pain that she had before she ever got hurt, which is a backache, and especially with heavy activity.”
The plaintiff in a workmen’s compensation suit, as in other civil cases, must bear the burden of proof, and he is required to establish his claim by a reasonable preponderance of the evidence. Ware v. Industrial Timber Products, Inc., 147 So.2d 672 (La.App. 3 Cir. 1962); Davis v. Western Casualty and Surety Company, 159 So.2d 309 (La.App. 2 Cir. 1964).
We think the evidence in the instant suit establishes that Mrs. LaFleur was disabled until April 8, 1969, but that it fails to establish that she has been disabled within the meaning of the workmen’s compensation act at any time after that date. In reaching that conclusion, we have interpreted Dr. Savoy’s testimony as being to the effect that she was disabled until the last day he examined her, which was on April 8, 1969. We also have considered the lay testimony, but have concluded that it does not overcome the medical evidence which strongly preponderates to the effect that Mrs. LaFleur has fully recovered from her back sprain by the above mentioned date, that her pre-existing spinal defect was not aggravated or made symptomatic by that injury, and that she has not been disabled since that time.
In view of the conclusions which we have reached, the judgment appealed from must be amended to award compensation benefits only from the date of the accident to April 8, 1969.
For the reasons herein set out, that part of the judgment appealed from which awards plaintiff compensation benefits for a period not to exceed 400 weeks is amended to decree that plaintiff, individually and on behalf of his wife, Marie LaFleur, is awarded compensation benefits at the rate of $35.00 per week, beginning on November 6, 1968, and ending on April 8, 1969, together with legal interest on each past due installment until paid, subject to a credit for all payments previously made. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.