TUCKER, Judge.
This is a workmen’s compensation suit by plaintiff, Mrs. Alma Dickerson, for the death of her husband, Herbert O. Dickerson, on December 4, 1964 due to a heart attack, allegedly work-induced, while on the work site of his immediate employer, Plant Services, a division of Barnard & Burk Industrial Corporation, which had a construction contract with Dow Chemical Co., Inc. The workmen’s compensation insurers of both corporations, Firemen’s Fund Insurance Company and Associated Indemnity Corporation, respectively, as well as Dow Chemical Co., Inc., are named as defendants. Exceptions of no cause of action were interposed by Dow Chemical Co., Inc., and Associated Indemnity Corporation, and these exceptions were maintained and judgment was signed on October 20, 1967, dismissing the suit as to these ex-ceptors. Plaintiff’s motion for a new trial on these exceptions was denied, and the case proceeded to trial on the sole factual issue of whether or not the decedent sustained an accident within the meaning of the Louisiana Workmen’s Compensation Law while acting in the course and scope of his employment as a laborer with Barnard & Burk Industrial Corporation.
Primarily on the basis of the testimony of the witnesses, Haywood Greenhouse, Audrey Bynum and Gordon Landry, the trial judge found that the plaintiff failed to discharge her burden of proving that the decedent’s heart attack was an accident sustained in the course and scope of his employment, and plaintiff has appealed from the judgment, alleging error by the lower court in analogizing the present case to that of Holman v. M. L. Bath Co., 226 So.2d 588 (La.App., 2d Cir. 1969), and in not finding a causal accident on the facts proved.
The facts surrounding the death of Herbert O. Dickerson are in dispute and the testimony is in conflict. These conflicting and disputed statements can best be summarized by an examination of testimony as follows:
The plaintiff, Mrs. Alma Dickerson, swore that the decedent was 57 years old, weighed 140 lbs. and was 5' 6" tall. He arose at 5 :00 o’clock a. m. the morning of his death as usual; fixed his own light breakfast, and left for work about 6:15 or 6:20 a. m. to drive his truck to the work site a few miles from his home in Brusly, La. He appeared to be normal and made *576 no complaints of any kind. He returned after 8:00 a. m., driving his, truck himself, came into the kitchen of the house with his hand over his chest, saying that he was sick as he could be, and for her to call the doctor. He proceeded into the bathroom where he removed his shoes and work clothes and put on pajamas. Meanwhile, Mrs. Dickerson ran four or five houses up the street to get her daughter-in-law to drive them to the doctor. The daughter-in-law gathered up her small child, locked the house and came immediately. Mrs. Dickerson helped the decedent into his robe and slippers, after he had previously drawn his trousers over his pajamas. Together Mrs. Dickerson and her daughter-in-law assisted Dickerson into the car, and rushed him to the doctor’s office in the Plaque-mine Hospital, arriving there about 8:45 a. m. He collapsed as soon as he entered the hospital, apparently due to another heart attack. The doctor and nurses worked on him immediately, but he died at 10:28 a. m. Mrs. Dickerson further stated that the decedent made no complaints about physical distress on the evening preceding his death. (Tr. 169)
When called as a witness, Clarence Bean, decedent’s foreman, 69 years of age at the time of trial, retired since 1966, could remember nothing, except that Dickerson had come to him, saying that he was sick, and that he, Bean, took him in a truck to get his check, and then ordered a teamster to drive him to his own truck. He offered to drive Dickerson home, but he refused. Initially the trial judge refused to permit plaintiff’s counsel to see the statement made by Bean to defendant’s agent on February IS, 1965, about two months after decedent’s death. This statement was later admitted presumably on the ground that it was given almost four years previous to the trial, shortly after decedent’s death, and illustrated a keener memory on the part of Bean for the particulars leading to the death of the decedent. (Tr. 137) In the un-sworn statement Bean recounted that Dickerson had worked some 30 or 40 minutes in backfilling a ditch before asking to be relieved because of his chest pains. This was borne out by the time sheet of the company employer, which gave Dickerson credit for one hour’s work prior to his being allowed to return home on account of illness. Winfred Coker, construction superintendent, explained the hour’s time credit by saying that an employee who had completed a portion of an hour was given credit for the full hour, when the foreman turned in one hour. (Tr. 200-203) Beap also testified that it was his policy to keep all of his crew working full time, and not let anyone sit down. Incidentally the witness Bean had refused to give plaintiff’s counsel a statement in advance of the trial, and said his reason for not giving same was so that he would not injure himself. (Tr. 104) Any error that might have resulted from the trial court’s initial failure to require the production of this statement was cured by the eventual admission of the document and its introduction into the record as Plaintiff’s Exhibit No. 4.
Audrey Bynum, a lifelong friend of the decedent, and a member of the same work crew, testified that Dickerson worked with a shovel, backfilling a ditch for about one-half hour- — -maybe an hour — the morning he died. (Tr. 113) He had on February 15, 1965 stated to an adjuster that the decedent was engaged in digging rather than back-filling a ditch on the morning in question. Bynum, in this statement, counted the work done as a light type of work. (Tr. 118-119) In this same statement Bynum also said that Dickerson complained to him about a hurting in his chest prior to the time that they actually began work at 7:00 a. m. (Tr. 119), and likewise the decedent had made mention of this hurting on the preceding day. (Tr. 122)
Haywood Greenhouse, on the same labor crew as Dickerson, did not see the decedent working on the morning he died. He only observed the decedent in the truck shortly after the crew started working, and did not observe Dickerson’s condition while he was *577 in the truck; the day in question was cool and rainy and the terrain was muddy. This witness had heard no complaints from Dickerson on the previous day about his hurting.
The testimony of Gordon Landry is to the effect that he saw Dickerson in the labor shack; that the decedent did not work on the morning in question; that it was shortly after 7:00 a. m. that the foreman, Bean, told him that Dickerson was sick and asked Landry to take him to his truck so Dickerson could return home. Only a few minutes later, after he had folded some papers, he says he took the decedent, who looked ill, to get his truck. Landry asked Dickerson to let him take him to the Dow First-Aid shack, but he refused, saying it was just something he had eaten for breakfast, and that he would go home, lie down, and take something for his indigestion or heart burn there. When Dickerson alighted from the Landry truck he vomited, but continued, and got into his truck to drive home. Landry urged the decedent to let him drive him home, and let one of decedent’s family come back for the truck, but Dickerson insisted he could make it.
The record appears to support amply plaintiff’s contention that Dickerson had worked for a short period of time, probably 30 to 40 minutes but certainly not in excess of one hour, prior to his leaving the job site as witnessed by the statements and testimony of Bean and Bynum, and the payroll journal of decedent’s employer filed in the record as defendants’ Exhibit No. 1. Contrariwise, the defendants, throughout these proceedings have urged that the testimony, taken as a whole, does not justify the finding of any work performed by Dickerson on December 4, 1964, and illustrative thereof, the defendants place great stress on the testimony of the witness Landry, and to a lesser degree on that of the witness Greenhouse. We cannot agree with this position.
The pertinent law with respect to the right to recover workmen’s compensation benefits by an employee or his heirs resulting in disability or death caused by a heart attack induced by physical work is stated in the case of Holman v. M. L. Bath Company, 226 So.2d 588 (La.App.2d Cir., 1969) quoted in part as follows:
“Our jurisprudence is now settled that an employee may recover under the Workmen’s Compensation Act for disability resulting from a heart attack. The difficult problem in heart cases is defining the meaning of ‘accident’ as used in the statute and whether the accident (exertion) caused the disability. If the employee is able to show that he performed duties requiring the use of physical effort which precipitated the heart attack (accident) our courts have decided the requirements of the statute have been satisfied. (Citations).”
“Viewing all of the evidence in the light most favorable to Holman we find he failed to prove he performed duties for Bath requiring such physical exertion preceding his heart attack which would allow the attack to be interpreted as an accident. Thus, he has failed to establish by a preponderance of the evidence a causal connection between his present disability and work-connected accident. ‡ ‡ ‡
The plaintiff claims that the facts which obtained in the case of Gatte v. Coal Operators Casualty Company, 256 La. 325, 236 So.2d 485 (1970) are apposite to the facts of the case at bar. The evidence in the cited case preponderated to the effect that the plaintiff, Mrs. Ruby Gotte, while at work in a heavily laborious occupation, experienced a heart attack which was work induced. This factual situation does not prevail in the instant case because in the cited case the plaintiff had been engaged at her job of cooking, entailing heavy manual labor, for more than three hours prior to the onset of her heart attack.
*578 The record shows that the first notice advising defendants that the plaintiff contended her husband died as a result of a heart attack, work induced, was by letter dated February 8, 1965. The medical testimony of Dr. Richard Levy Robin and Dr. Rhodes J. Spedale played no substantial part in the decision of the trial judge in view of his finding that the plaintiff did not sustain the burden of proving an accident to be the cause of decedent’s death. Dr. Spedale opined that the decedent’s death was caused by coronary thrombosis, which defendants did not dispute. However, he was required to rely upon the decedent’s health history to the effect that he had not experienced cardiac difficulty previous to his short space of work on December 4, 1964, in order to reach his conclusion based on hypothesis that the coronary thrombosis was attributable to an accident which was work induced. Dr. Robin, an expert in the field of internal medicine, gave his testimony, based wholly on hypothetical facts, and concluded the decedent died as the result of a myocardial infarction. Dr. Robin further stated that it is most difficult to fix the beginning time of the symptoms of myocardial infarction. The trial judge attached little or no significance to the medical evidence, since he did not have proof of an accident.
We note at this point that the onus on the plaintiff to establish that a heart attack is accident inspired, and the like difficulty on the part of a defendant to disprove an accident as causing a heart attack are both considerable in degree.
The law is clear that, while the rules of pleading and proof are relaxed in workmen’s compensation cases, the plaintiff bears the burden of proving his case by a reasonable preponderance of the evidence as in any other case. See LaFleur v. Travelers Ins. Co., 236 So.2d 251 (La.App.3d Cir., 1970) writ denied 256 La. 841, 239 So.2d 353; King v. Employers Mut. of Wausau, 220 So.2d 201 (La.App.3d Cir., 1969); Kirkham v. Consolidated Underwriters Ins. Co., 219 So.2d 827 (La.App.2d Cir., 1969).
In its findings of fact the trial court held that the plaintiff failed to prove by a preponderance of the evidence that Dickerson performed duties on December 4, 1964 “that required physical exertion”. While this court believes that the record shows an output of physical effort on the part of the decedent on the date in question, we agree with the trial court’s conclusion that the proof does not reasonably preponderate that Dickerson’s heart attack and his eventual death were accident inspired, especially in view of the witness Bynum’s testimony that the decedent complained to him about his chest hurting the morning of December 4, 1964 before either of them went to work and also in the same vein on the previous day.
Considering the circumstances as a whole we do not find manifest error in the lower court’s judgment that the plaintiff failed to prove her case that the death of her husband was occasioned by a heart attack which was accidentally caused by his physical exertion while in the course and scope of his employment.
The judgment of the lower court is affirmed at plaintiff’s costs.
Judgment affirmed.