SAMUEL, Judge.
This is a suit in workmen’s compensation for total and permanent disability benefits, penalties and attorney’s fees. The defendants, Boudreaux & Dane Construction Company, a general contractor, and its compensation insurer, General Accident, Fire and Life Assurance Corporation, Ltd.,[1] answered in the form of a general denial and filed a third party demand for indemnity against Leonard Andres, d/b/a Fort Knox Construction Company, plaintiff’s immediate employer and Boudreaux & Dane’s subcontractor.
Following trial on the merits, there was judgment on the original demand in favor of plaintiff in the sum of $5,733. The third party demand was dismissed. Only the plaintiff has appealed. In this court he contends: (1) he is entitled to benefits for total and permanent disability; and (2) in addition, he is entitled to penalties and attorney’s fees.
There is no dispute concerning the fact that plaintiff was injured during the course and scope of his employment. He was a carpenter. On May 8, 1972, while engaged in the construction of a house, he fell from the ceiling joists to the ground nine and one-half feet below, landing on his back. He was taken by ambulance to the emergency room at Ochsner Foundation Hospital where he was seen and treated by Dr. Joseph F. Mabey, the staff surgeon then in charge of that room.
Because plaintiff had fallen a considerable distance, a thorough physical was performed, including extensive x-rays. Dr. Mabey diagnosed plaintiff’s injuries as a severe contusion of the right lumbar back, contusion of a kidney, and fracture of the transverse processes at L-l and L-2. He was observed at the hospital for approximately eleven hours for possible signs of hidden hemorrhage or other findings, which did not develop, and then released on medication.
Plaintiff was seen the following morning by Dr. Mabey. At that time there were no additional complaints. He was advised to rest and use a rib belt for mobility and support. Tablets for pain and butazolidin (an analgesic, but primarily anti-inflammatory medication) were prescribed.
Thereafter, Dr. Mabey saw plaintiff on approximately four occasions. He improved considerably and, because he was very desirous of returning to work, on May 29 he was told he could return to limited physical activities. When last seen by Dr. *327 Mabey for this accident on June 13, 1972 plaintiff was markedly improved. He was advised to gradually increase physical activities, but to avoid lifting and climbing and to return in two or three weeks to make sure he was doing well as he increased his job performance.
Plaintiff did not return to see Dr. Mabey. As he had been on only light duties at the time last seen, Dr. Mabey did not express an opinion as to whether or not he could perform the full duties of a carpenter. The doctor was aware of the fact that plaintiff did have spondylolisthesis, a congenital condition of the lumbar spine not in any way caused by the accident. Dr. Mabey was of the opinion plaintiff’s fall had not aggravated the spondylolisthesis.
Plaintiff returned to his employment with Andres as a carpenter on June 8,1972, doing light work for six weeks to two months and then returning to full duties. He worked until December 8, 1972 when he left the job. Andres testified plaintiff sometimes, but not always, complained of back pain; at times he worked as a foreman; and during the fourteen year period he had worked for Andres, plaintiff had gone to sea on one occasion. Andres described plaintiff as an excellent and dependable worker and stated that when plaintiff left the job in December he told Andres he was tired of carpentry and wanted to go back to sea.
On August 8, 1972, three months after the accident, plaintiff saw Dr. Stuart I. Phillips, an orthopedic surgeon, with complaints of pain related to bending and lifting. That doctor found plaintiff had limited motion and paravertebral muscle spasms on the right, with limitation mainly in the left lateral deviation and tenderness over the area of the back. X-rays showed the spondylolisthesis but did not show the fracture of the transverse processes at L-l and L-2, four inches from the spondylolisthesis between L-5 and S-l. Dr. Phillips learned of the fracture from his reading of Dr. Mabey’s report. He testified that many persons with this type of mechanical back injury and pain limit their activities, learn to live with the condition, and do quite well, while others go to surgery. He recommended plaintiff perform light labor which did not require heavy lifting or repetitive bending.
On December 8, 1972, Dr. Phillips found plaintiff’s condition had worsened. The previous findings were again noted, additional x-rays were taken, and plaintiff was advised to limit his activities to light endeavors or have an operation to fuse the bone. At that time plaintiff was not interested in surgery, so the doctor agreed he should do light work. On August 20, 1973 plaintiff again saw Dr. Phillips with complaints of pain related to activity and relieved by rest. The physical examination and x-rays remained unchanged. On June 10, 1974 plaintiff complained of pain when he was required to do heavier duties as a seaman. The examination and x-rays remained unchanged. On January 14, 1975 plaintiff returned to Dr. Phillips with the same complaints. The doctor felt it was a matter of determining if plaintiff could find a light enough job at sea or be retrained for light work on shore.
Dr. Phillips concluded plaintiff had a 15% disability of the back, and that he was unable to perform the full duties of a carpenter, both solely due to the spondylolis-thesis. However, he stated it was common for spondylolisthesis to remain asymptomatic until an injury and then become symptomatic. In his opinion, this is what had occurred in the instant case, that plaintiff’s spondylolethesis had been aggravated by the accident.
Plaintiff testified: He asked to be released from therapy and be allowed to return to light work because he was unable to support his family with only the compensation payments. He returned to light work in June. Thereafter, he performed his carpentry duties in pain. In December, on the advice of Dr. Phillips, he left his employment as a carpenter because of the pain and sought work as a seaman which he knew from previous experience to be lighter work than that of a carpenter. He prefers to work as a carpenter, but is unable to bend, *328 stoop and lift to the same extent as before the accident. He finds the duties of a seaman different and less strenuous than that of a carpenter and continues to work as a seaman even though he cannot do that work without pain. However, since the accident in suit and despite that pain, he has shipped out on sixteen different occasions. On most of those occasions he was required to take pre-employment physical examinations which were fairly routine, including blood and blood pressure tests and the like, without x-rays. In connection with those examinations he did not disclose his back problem for fear he would not obtain the employment.
Our compensation act defines permanent total disability as the inability “to do work of any reasonable character.”[2] In the landmark case of Knispel v. Gulf States Utilities Company, Inc., 174 La. 401, 141 So. 9, the Supreme Court construed this statute to mean an employee is so disabled if he is unable to perform work of the same or similar description as that he was performing at the time of the accident. Our courts consistently have resisted all assaults on this position. The rule is stated in Bellard v. Insurance Company of North America, La.App., 193 So.2d 922, 923, as follows:
“Under the jurisprudence, a skilled or semi-skilled workman is regarded as totally disabled whenever an accident causes the loss of those physical faculties which had enabled him to earn a living performing the duties in which injured, even though despite his injuries he may be able to qualify and perform successfully other types of work.”[3]
Another rule pertinent here is that the workman is considered disabled if as a result of the industrial accident he cannot perform his work without substantial pain.[4]
As shown by his written Reasons for Judgment, the trial judge awarded plaintiff compensation at the rate of $49 per week for 140 weeks, or $6,860, less $1,127 compensation previously paid. He limited compensation to 140 weeks on the ground that January 15, 1975 was the last time Dr. Phillips had seen plaintiff. He was of the opinion plaintiff was not totally and permanently disabled because he had been able to perform his duties as a merchant seaman for approximately two years, passing physical examinations in the interim.
It would seem the position of merchant seaman involves as much hard labor as that of a carpenter, but the record discloses the contrary was so in this case. Plaintiff testified he worked first as an ordinary seaman and later as an able bodied seaman. His duties, as described by him, were lighter and less laborious, and involved less of the back movements which primarily caused the pain, than his work as a carpenter. That testimony is supported by two of his witnesses, a business representative of the carpenter’s union and an assistant port agent, and the record contains no evidence to the contrary. In addition, we note that the only medical evidence on the subject, the testimony of Dr. Phillips, is that plaintiff is unable to'perform the full duties of a carpenter due to the fact that his spondylolethesis had been aggravated by the accident and we are satisfied that plaintiff did perform his duties, both as *329 a carpenter and as a seaman, in substantial pain. Accordingly, we award him compensation for permanent total disability.
We find no merit in plaintiff’s second contention relative to penalties and attorney’s fees. The last medical report received by the defendant insurer from Dr. Mabey stated plaintiff had returned to work and had been advised to perform light duties for the next two weeks. Compensation payments had been started on May 16 and were paid until October 17,1972, a total of twenty-three weeks. The payments were not stopped until after plaintiff had resumed his duties as a carpenter. There was no demand to reinstate payments until receipt of a letter from plaintiff’s attorney in September, 1973. This demand was denied because plaintiff was at sea and expected to remain there for eighteen months, so that the defendant insurer did not have an opportunity to have him examined by a physician of its choice. The same inability to have plaintiff examined was present with regard to information from Dr. Phillips, plaintiff’s physician, relative to the 15% disability estimated by that doctor. Under these circumstances, refusal to pay additional benefits was not arbitrary, capricious or without probable cause.[5]
For the reasons assigned, the judgment appealed from is affirmed in part and reversed in part, and it is now ordered that there be judgment in favor of plaintiff, Arnold Bustillo, and against the defendants, Boudreaux and Dane Construction Company, and General Accident, Fire & Life Assurance Corporation Ltd., in solido, for compensation at the rate of $49 per week and continuing for the duration of the disability, not to exceed 500 weeks, with legal interest on each past due installment from its due date until paid, subject to a credit for compensation previously paid. In all other respects the judgment is affirmed. Costs in this court are to be paid by the defendants-appellees.

AFFIRMED IN PART; REVERSED IN PART.

BEER and BOUTALL, JJ., dissent in part and concur in part.

. Erroneously referred to in the original petition and title as “General Accident Group”.

. LSA-R.S. 23:1221(2).

. See also Hebert v. Your Food Processing & Warehouse, 248 La. 197, 177 So.2d 286; Ordoyne v. Wilson, La.App., 262 So.2d 82; Castile v. H. E. Wiese, Inc., La.App., 231 So.2d 406; Cooley v. Insurance Company of North America, La.App., 216 So.2d 388; Roberie v. Ashy Construction Company, La.App., 215 So.2d 857; Mouton v. Habetz, La.App., 215 So.2d 363; Gallow v. Wilson P. Abraham Construction Company, La.App., 197 So.2d 680, and Landry v. Central Excavation Company, La. App., 196 So.2d 571.

. Reeves v. Russo, La.App., 302 So.2d 332; Ordoyne v. Wilson, supra, footnote 3; Rutherford v. Dixie Concrete, Inc., La.App., 222 So.2d 508; Meche v. Employers Liability Assurance Corp., La.App., 206 So.2d 152; LaRosa v. Insurance Company of North America, La.App., 206 So.2d 135; Murphy v. Baton Rouge Coca-Cola Bottling Company, La.App., 165 So.2d 636, and Veillion v. Knapp & East, La.App., 158 So.2d 336.

. The applicable statute, LSA-R.S. 22:658, provides for penalties and attorney’s fees for failure to make payment within sixty days after receipt of proofs and demand therefor “when such failure is found to be arbitrary, capricious, or without probable cause.”