486 So.2d 112 (1986)
Noreen MOTT
v.
WAL-MART STORES, INC. and XYZ Insurance Co.
No. 85-C-2294.
Supreme Court of Louisiana.
March 31, 1986.
Joseph G. Kopfler, for plaintiff-applicant.
Frank A. Flynn, Allen, Gooch, et al., for defendants-respondents.
BLANCHE, Justice.
This case involves a claim by the plaintiff for workman's compensation benefits. The claim arises out of an on-the-job accident which aggravated her latent pre-existing spinal condition. We granted writs on application of the plaintiff to determine whether, based on the facts of this case, plaintiff is entitled to compensation payments based on the schedule of benefits provided for partial disability. Specifically, we are called to decide if plaintiff is entitled to the schedule of benefits under La. R.S. 23:1221(3)[1] (partial disability) or, as *113 the lower courts determined, under La.R.S. 23:1221(4)(p)[2] (impairment of physical function). 480 So.2d 735 (La.1986).

FACTS
The facts are not in dispute. Plaintiff (hereinafter "Mott"), a twenty-three year old, married, mother of three children, was hired by the defendant (hereinafter "Wal-Mart") around April 13, 1983. Because Wal-Mart was opening a new store in the Houma area, Mott first worked assembling shelves and putting out inventory. A short time after the opening of the store Mott began working as a regular cashier, averaging between 36 and 38 hours per week. Her rate of pay at the time of the accident was approximately $3.70 per hour. As was Wal-Mart's policy, regular cashiers were required to assist in various parts of the store in different capacities when there was no need for numerous cashiers attending the registers. On June 15, 1983, Mott had gone to the electronics department to assist in moving stereo equipment. While engaging in the lifting activity for a half-hour to an hour, Mott noted the onset of back pain. At this time she did not report the incident to any store management personnel. Additionally, a co-employee who was also moving the stereo equipment did not notice any "accident" or any objective symptoms of back pain on the part of Mott.
Approximately one week after the alleged accident Mott notified her supervisor of the incident and her resulting back pain. At some point after the formal notice Mott was seen by Dr. Thomas Givens, a general practitioner and Mott's family physician. Based on Mott's subjective complaints of pain and a physical examination, Dr. Given's diagnosed the problem as mild lumbar strain and prescribed muscle relaxing drugs. However, because of Mott's continued complaints of pain, Dr. Givens later ordered X-rays of her spinal column. At this time it was discovered that Mott was suffering from spondylolysis and spondylolisthesis.[3] At trial it was Dr. Givens' opinion that the mild lumbar strain aggravated the pre-existing spinal condition. It should be noted that at no time prior to the accident of June 15, 1983 did Mott suffer any symptoms from the pre-existing disease, nor did she suffer from any back pain.
Because Mott's complaints of pain persisted, Dr. Givens referred her to an orthopedic specialist, Dr. A.D. Walker. After an examination it was Dr. Walker's initial opinion that the work-related injury (the mild lumbar strain) was not the cause of Mott's continued complaints of pain. However, based on Mott's continued subjective complaints of pain, Dr. Walker changed his position, concluding that the work-related injury aggravated her pre-existing spinal condition. As conservatory treatment he recommended that Mott observe some restrictions: (1) that she not lift things weighing more than twenty pounds, and (2) that she not engage in any occupation where she would have to remain standing or sitting for any prolong periods of time. Dr. Walker nonetheless stated that Mott could engage in some gainful occupations *114 (i.e. secretarial or cashier) which fit the restrictionswhich as he described were not absolutes, but merely guidelines which could be modified depending on the amount of associated pain. In quantifying Mott's disability, Dr. Walker felt that she had a ten percent (10%) physical impairment of which one-fourth (2.5%) was attributable to the accident.
Mott informed Wal-Mart management personnel of the restrictions that Dr. Walker had recommended and, based on the restrictions, Wal-Mart dismissed Mott stating that there were no positions which could meet those stringent restrictions. Further, Wal-Mart refused to pay compensation benefits or medical expenses, claiming that the accident, if any, was not the cause of Mott's injuries. Mott filed the present action seeking compensation benefits, medical expenses, penalties and attorney's fees.
After hearing all the evidence, the trial court, apparently relying on Ventress v. Danel-Ryder, Inc., 225 So.2d 765 (La.App. 3d Cir.1969)[4], rendered judgment in favor of Mott. The trial court awarded her sixty-six and two thirds percent of her average weekly wages, or $98.67 per week, for a period of one hundred weeks. The award was based on the trial court's finding of an impairment of physical function under section 1221(4)(p). Wal-Mart was given a credit for the wages it had paid Mott during the period between the accident and her dismissal, amounting to $1,853.93. Lastly, Mott was awarded the amount of her medical expenses. The trial court refused Mott's claim for penalties and attorney's fees.
Mott appealed to the First Circuit Court of Appeal, and that court affirmed the judgment of the trial court in part. The court reversed the trial court's award of credit for wages paid after the accident based on the authority of Mayes v. Louisiana-Pacific Corp., 379 So.2d 46 (La.App. 3d Cir.1979), writ denied 381 So.2d 1232 (La.1980).[5] In all other respects the trial court's judgment was affirmed. Mott v. Wal-Mart Stores, Inc., 479 So.2d 703 (La. App. 1st Cir.1985).

DECISION ON THE MERITS
There is no dispute that Mott was involved in a work-related accident, producing a compensable injury, and that the injury was causally related to the work-related accident. In the vernacular of the Compensation Act, Mott's asymptomatic spondylolysis and spondylolisthesis were aggravated to the condition of symptomatic by the mild lumbar strain, which was the result of an accident arising out of and in the course of her employment at Wal-Mart. La.R.S. 23:1031 (1985); LeCompte v. Kay, 156 So.2d 75 (La.App. 1st Cir.), writ refused 245 La.91, 157 So.2d 233 (1963). There likewise is no dispute that the aggravation of an asymptomatic condition to symptomatic is compensable. Johnson v. Travelers Ins. Co., 284 So.2d 888 (La.1973).[6] The *115 question is under what schedule of benefits is compensation due. The crux of the inquiry is whether the lower courts reached an erroneous conclusion of law from the facts in this case as to the extent of Mott's disability. The answer to the question depends entirely upon what occupations, if any, Mott can engage in based on her level of physical impairment. For the following reasons we reverse the judgments of the lower courts and conclude that the plaintiff is entitled to the schedule of benefits applicable to persons experiencing partial disability. La.R.S. 23:1221(3).
As stated, section 1221(3) provides that an employee is deemed partially disabled if he is unable to perform the duties in which he was customarily engaged when injured, or duties of the same or similar character, nature or description for which he is fitted by education, training and experience. Dodd v. Nicolon Corp., 422 So.2d 398 (La. 1982); Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981). The statutory definition is met, and the claimant is entitled to benefits for partial disability, if a preponderance of the evidence is in favor of finding that the claimant is unable to perform his previous job duties. Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982). As correctly stated by our brothers of the Third Circuit Court of Appeal in Clark v. Pernie Bailey Drilling Co., 445 So.2d 183 (La.App. 3d Cir. 1984), a worker is "partially disabled" when he cannot perform the duties required by his former employment, but can still do other work, or would experience substantial pain when working in his former occupation, but could perform other work without experiencing such pain.
The preponderance of the evidence shows that Mott is partially disabled. The record reveals that Mott would experience continued pain in her back when she attempted to engage in her former position as cashier. Additionally, she is unable to fulfill the restrictions imposed by Dr. Walker in her former position. She cannot lift objects or remain in a static position, either sitting or standingall activities which are part of the job as cashier. As stated, Dr. Walker's testimony, by way of deposition, substantiates this conclusion. While Dr. Walker attributes one-fourth of plaintiff's physical impairment (2.5%) to the accident, from a legal standpoint this quantification is irrelevant. Under the Compensation Act and the jurisprudence interpreting its provisions, an employer is responsible for the total disability of his employee which is causally related to the work-related accident, even if the total disability is composed of some pre-existing disease, provided that the work-related accident aggravated the pre-existing condition. See Hammond v. Fidelity & Cas. Co. of New York, 419 So.2d 829 (La.1982); Curtis, supra. This is what is referred to by the phrase "the employer takes the employee as he finds him." Larson, Workmen's Compensation, § 12.20, pp. X-XXX-XXX (Desk ed.).
Perhaps most illuminating on the effect of Mott's disability on her ability to perform her previous job is the fact that when faced with the restrictions imposed by the aggravation of the spondylolysis and spondylolisthesis, Wal-Mart responded that there were no positions which could accommodate Mott in her present condition. Based on the totality of the record, it is clear that Mott is unable to perform the duties which she was customarily engaged in at the time of the accident. Mott can no longer lift objects weighing over twenty pounds and therefore can not engage in the stock work required of all Wal-Mart cashiers. Additionally she can no longer tend a register for any long periods of time since to do so would require her to remain standing, sometimes for periods in excess of two hours. We have recently approved a finding of partial disability where the work-related accident caused a back injury resulting *116 in a fifteen percent (15%) permanent impairment to the body, and an orthopedic specialist recommended that the patient not lift objects weighing more than forty pounds, nor engage in jobs requiring frequent stooping and bending. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980).
Much of defendant's argument centers on the statement by Dr. Walker that the plaintiff could engage in secretarial work, a position which she had worked prior to accepting the position at Wal-Mart. As has already been stated, this fact alone would not deny Mott recovery since we have already determined that she has proven by a preponderance of the evidence that she is unable to perform the work she was customarily engaged at the time of the injury. Martin, supra; Clark, supra. Should Mott engage in another occupation which would not cause her the discomfort she presently experiences in her position as cashier, the sums due in compensation could be reduced or eliminated, depending on the level of wages she earns at the new position. La.R.S. 23:1221(3) (1985, version prior to 1983 La.Acts No. 1, § 1, 1st Ex. Sess., eff. July 1, 1983); Johnson v. Aetna Cas. & Sur. Co., 422 So.2d 1187 (La.App. 1st Cir.1982), writ denied 429 So.2d 127 (La.1983); Naquin, supra. Based on the record before us, Mott has been unemployed since her dismissal from Wal-Mart; therefore, she is entitled to compensation based on the entirety of her average weekly wages without reduction for future earned wages.

DECREE
For the reasons assigned, the judgments of the trial court and the court of appeal are reversed. Judgment is hereby entered in favor of plaintiff awarding her monthly benefits in the amount of $98.67 per week for the period between the date of the accident and the date of the finality of this judgment and for 662/3% of the difference between the wages plaintiff was earning at the time of the injury and any lesser wages she actually earns in any week thereafter, during the period of disability, not to exceed 450 weeks.
REVERSED.
NOTES
[1] Section 1221(3) provides in relevant part:

For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lessor wages... and not beyond a maximum of four hundred fifty weeks
. . . .
La.R.S. 23:1221(3) (1985, version prior to 1983 La.Acts, No. 1, § 1, 1st Ex. Sess., eff. July 1, 1983) (emphasis added).
[2] Section 1221(4)(p) provides in relevant part:

In cases not falling within any of the provisions already made ... where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable ... not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks.
La.R.S. 23:1221(4)(p) (1985, version prior to 1983 La.Acts, No. 1, § 1, 1st Ex. Sess., eff. July 1, 1983).
[3] "Spondylolysis" is defined as the "[d]issolution of a vertebra; a condition marked by platyspondylia, aplasia of the vertebral arch, and separation of the pedicle." "Spondylolisthesis" is defined as the "[f]orward displacement of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth." Dorland's Illustrated Medical Dictionary, p. 1288 (23rd Ed. 1959).
[4] Ventress, supra is inapposite to the case at bar. While it is true that the court in Ventress allowed an award for impairment of physical function under section 1221(4)(p) for a claimant who had a ten percent (10%) permanent impairment of the back (a situation not unlike the quantification of Mott's disability by Dr. Walker), the facts in Ventress, supra, indicate that the impairment was not severe enough to handicap the plaintiff in gaining employment nor to prevent him from performing his duties at his former job. Based on these facts, the Ventress court was correct in finding section 1221(3) inapplicable; therefore, the only appropriate remedy for the plaintiff was section 1221(4)(p).
[5] Neither party raises the issue of wage credit in this Court; therefore, the issue is not before us. In any event the court of appeal was correct when it concluded that Wal-Mart is not entitled to a credit for wages actually earned by Mott, the injured retained employee, since these wages were actually earned by Mott and at the time Wal-Mart was not paying compensation. Madison v. American Sugar Refining Co., 243 La.408, 144 So.2d 377 (1962); Lachney v. Cabot Corp., 368 So.2d 500 (La.App.3d Cir.), writ denied 371 So.2d 834 (La.1979).
[6] For cases dealing with the aggravation of pre-existing spondylolysis and spondylolisthesis, see for example Bustillo v. Boudreaux & Dane Constr. Co., 340 So.2d 325 (La.App. 4th Cir. 1976), writ denied 341 So.2d 419 (La.1977); Curtis v. The Texas & Pacific Motor Trans. Co., 260 So.2d 28 (La.App. 3d Cir.1972); LaFleur v. Travelers Ins. Co., 236 So.2d 251 (La.App. 3d Cir.), writ denied 256 La.841, 239 So.2d 353 (1970); Guillory v. New Amsterdam Cas. Co., 141 So.2d 493 (La.App. 4th Cir.1962), affm'd 244 La.225, 152 So.2d 1 (1963); Lott v. Southern Farm Bureau Cas. Ins. Co., 135 So.2d 502 (La.App. 2d Cir.1961); Booker v. Phoenix Ins. Co., 124 So.2d 246 (La.App. 2d Cir.1960); Hebert v. Hartford Accident & Indemnity Co., 88 So.2d 243 (La.App. 1st Cir.1956).