SAVOIE, Judge.
Plaintiff appeals the judgment of the trial court dismissing his claim for workmen’s compensation benefits.
Plaintiff, Lionel Sims, alleges that he is totally and permanently disabled as a result of an accident which occurred on July 16, 1981, while he was in the course and scope of his employment with the Ethyl Corporation. According to plaintiff, who was the only witness to the accident, the injury occurred while he was pulling electrical switches to cut the power in the yard which supplied one of the industrial complex banks. Plaintiff claims that while he was in the process of pulling the switch it jammed and his feet went out from under him causing him to fall and injure his back. Plaintiff was initially seen by the plant physician who referred plaintiff to Dr. Sam Irwin, a local orthopedic surgeon. The referral was due to plaintiff’s continual complaints of pain. Dr. Irwin diagnosed plaintiffs condition as being a strain and placed him on five days of bed rest. On July 23, 1982, plaintiff consulted Dr. Leonard Pope, a chiropractor. Dr. Pope conducted an examination of plaintiff consisting of motion studies and x-rays of the spine. These exams revealed the existence of ankylosing spondylitis, a disease of the spine in which there is a gradual loss of mobility in the joints between the vertebrae. Dr. Pope diagnosed plaintiff as suffering a sprain of the lower lumbar spine superimposed on the ankylosing spondylitis.
Plaintiff continued to see Dr. Pope for treatment until October 6, 1982. At this point, plaintiff consulted with several physicians, all of whom concurred in the prior diagnosis of ankylosing spondylitis. On November 11, 1982, some sixteen months following the accident, plaintiff consulted Dr. Hector Mena, a specialist in the practice of Rheumatology. Dr. Mena’s diagnosis confirmed plaintiff’s condition as being ankylosing spondylitis and began treating him with non-steroidal anti-inflammatory drugs and physical therapy.
In conjunction with the therapy, Dr. Mena recommended that plaintiff obtain a whirlpool unit and a hospital type bed for his home. Plaintiff alleges that problems arose when he attempted to secure payment for these and other medical expenses from the Ethyl Corporations’s workmen’s compensation insurance carrier, Travelers Indemnity Co. As a result, plaintiff filed suit seeking a judicial determination of total and permanent disability. Following trial on the merits, judgment was rendered in favor of defendant, dismissing plaintiff’s claim based upon a finding of no causal connection between the accident and the resulting disability.
*431 From this judgment plaintiff has appealed listing numerous issues all of which address the question of whether or not the trial judge érred in finding that the plaintiff’s present disability was not causally related to his employment accident of July 16, 1981.
In his reasons for judgment, the trial judge expressed his reliance upon and reference to our Supreme Court’s decision in Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829 (La.1982). In that case the court delineated the plaintiff’s burden of proof in a case such as this as follows:
The plaintiff-employee in a workmen’s compensation case bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Prim, v. City of Shreveport, 297 So.2d 421, 422 (La.1974). Nevertheless, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that the work accident caused the disability. Allor v. Belden Corp., 393 So.2d 1233, 1236 (La.1981); Lucas v. Insurance Company of North America, 342 So.2d 591, 595 (La.1977). “... Furthermore, medical testimony ‘must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability’ ...” Schouest v. J Ray McDermott & Co., 411 So.2d 1042, 1044-45 (La.1982).
A plaintiff-employee’s disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. Allor v. Belden Corp., supra at 1236; Lindsey v. H.A. Lott, Inc., 387 So.2d 1091, 1092 (La.1980); Lucas v. Insurance Company of North America, supra at 596; Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 1146, 221 So.2d 816, 827-28 (1969). This presumption is not a conclusive one; rather, it compels the defendant to come forward with sufficient contrary evidence to rebut it. Allor v. Belden Corp., supra at 1236.
In applying these principles to the facts of the case sub judice, we find, as did the trial court, that plaintiff failed to meet the burden of proof as set forth in Hammond. The record is completely devoid of any evidence, medical or non-medical, establishing any possibility of causal connection between the alleged accident and plaintiff’s disabling condition. We note at the outset that there is no question that plaintiff is disabled. However, we find, as did the trial court, that plaintiff’s disability is the result of ankylosing spondylitis, a hereditary spinal disease, and not the result of an accident as claimed by plaintiff.
The medical evidence presented at trial consisted of the testimony of plaintiff’s treating physicians Dr. Pope and Dr. Mena. The testimony of both doctors clearly established the fact that ankylosing spondyli-tis is a hereditary disease which takes years to develop and manifest. Additionally, Dr. Mena, a rheumatologist who has treated plaintiff since November 1982, testified that there is no relationship between trauma and ankylosing spondylitis. He further testified that while trauma may bring attention to the back which allows the ankylosing spondylitis condition to be diagnosed, it will not cause the condition. When asked specifically whether an incident such as claimed by plaintiff could cause ankylosing spondylitis, he stated that it could not.
As to the cause of this disabling disease, Dr. Mena testified as follows:
We know a lot more of ankylosing spon-dylitis than we knew a few years ago. You know, this is a very old disease. It has been discovered in animals in two or three thousand years before Christ. And *432 it has been discovered in mummies in the museums hundred of years old. And we now know that it is a hereditary disease, that you inherit something in your blood, in your body and you have the predisposition to acquire this disease more than others. And this has been just discovered in the last five years. And so now, we can check for this in Mr. Sims children. If they start getting back pain when they are twelve or thirteen years old, we may be suspicious that his child will have ankylosing spondylitis. So a lot of studies are being done now to determine when this condition will start, but we see children as young as eleven or twelve years old with ankylosing spon-dylitis. This disease is started somewhere between age eleven and maybe the early twenties, but it varies from person to person. And the first step is pain or a stiffness in the back of different intensity. Since this is a subjective finding, somebody will have pain — tolerate pain better than others some people can take pain more than others. Because of the type of work, the type of activity, the environment, that person may or may not complain of his back pain, or ignore the pain or start learning to live with that amount of pain or stiffness until it became to the point that it is intolerable, and then he seeks medical advice. Now most of the patients that we diagnose with that, diagnose about the age twenty-five — twenty-four. So we assume they start when they are about fifteen, by twenty-five we discover them. In the army — We have discovered most cases when they sign for the army because they start complaining of back pain. They cannot run as hard as other people can. And they have presently found that the disease is more common. These people did not know they had ank-ylosing spondylitis because they weren’t under the stress of the physical activity, then the diagnosis comes up. But we also have seen patients that we diagnose ankylosing spondylitis at age sixty, and they didn’t know they had the disease. And this is not uncommon, that a person had lived for many years not seeking medical advice.
Additionally, both Dr. Mena and Dr. Pope testified that plaintiff’s ankylosing spondyl-itis condition had developed several years prior to the time of the accident. According to Dr. Mena, the process must have started some five-ten years prior to the time the x-rays were taken by Dr. Pope.
Clearly this medical testimony given by plaintiff’s own expert witness establishes that the ankylosing spondylitis condition predated the accident and further, that the accident bears no relation to the condition or its manifestation. As to the injuries claimed by plaintiff as a result of the accident, the evidence reveals that the most plaintiff may have suffered was a sprain of the lower back. Dr. Pope testified that plaintiff suffered a sprain of the lower lumbar which was superimposed on the ankylosing spondylitis condition. However, when questioned by the trial judge, Dr. Pope testified the pain plaintiff experienced earlier was caused by the sprain but that pain had been resolved if not completely, then to a great extent, by his treatment. This testimony is substantial in light of the fact that Dr. Mena testified that when he examined plaintiff, all he found was the ankylosing spondylitis condition. There is no mention of a sprain or any residual effect from the sprain. The inescapable conclusion is that the lower back sprain, which was the only injury plaintiff suffered as a result of the accident, had healed prior to plaintiff’s visit to Dr. Mena. Therefore, plaintiff’s present disability is due to the existence of the ankylosing spondylitis condition, which, as supported by medical evidence, was not caused or aggravated by the accident.[1]
*433 Plaintiff is entitled to the presumption that the disability was caused by the employment accident due to the fact that plaintiff appeared in good health prior to the accident but exhibited symptoms of disability following the accident. Plaintiff, as well as his wife and several co-workers, testified that prior to this accident plaintiff had never had back problems and that immediately following the accident the problems began. We find the legal presumption in favor of plaintiff was sufficiently rebutted by the medical evidence presented. When asked by the trial judge whether there are any cases where trauma caused the disease, Dr. Mena testified as follows:
No, because we don’t know whether the disease was called a disease. It’s an inflammation. The origin is unknown. We know it’s hereditary. It is a predisposition that we acquire to develop this inflammation of the ligaments of the spine. But it takes a long time for these ligaments to calcify. It is a chronic calcification, chronic inflammation. It may take a long time for this to happen. This is like in a bursitis it takes long time, many times to hurt in a bursitis and eventually you see calcification, but it takes long time, five years at least.
One can easily come to the conclusion, as did the trial judge, that the fact plaintiff did not complain of back problems prior to the accident does not negate the existence of the disease. In his reasons for judgment, the trial judge stated:
Both of them (the physicians) testified, and this is the point that I find most significant, that the development of the ankylosing spondylitis, both as to the time of Dr. Pope’s examination and to the time of more importantly Dr. Mena’s examination, had to have progressed over a significant number of years prior. And very importantly in my mind, was that both testified that there would have had to have been pain suffered in the early inflammatory stages of the ankl-yosing (sic) spondylitis, well before it arrived at the point in time where it existed at the time of the examination. The reason that is important is because in the Hammond case there was no evidence presented whatsoever by anybody to indicate that there was any canifestation (sic). But both of the medical experts who testified in this case — or both of the experts, one a chiropractor and one a medical expert — testified that necessarily for the disease to have progressed to the point where it had progressed, (sic) that pain is absolutely necessary in the early stages. Therefore, in my mind, according to their testimony, it had manifested itself at that time, because what it does it affects the credibility of the plaintiff in this case. I am sure that in retrospect he wants to recall that he never had any problems or never had any pain. But that flys (sic) in the face of the very objective medical facts. That is why, I think, to hold that causation did exist in this case from an accident or from trauma, which resulted in his disability, would be a significant extension of the Hammond case, which was pretty extensive. Because I don’t believe that there had ever been this far an extension as there was in the Hammond case.
We agree with the reasoning and findings of the trial judge. The medical evidence clearly shows that there was no causal connection between the ankylosing spondylitis condition and plaintiff’s accident. The record reveals that at best the accident caused a minor sprain to plaintiff’s lower back which enabled the examining physicians to diagnose the ankylosing spon-dylitis condition. Our review of the record indicates that the trial court was correct in finding that plaintiff failed to prove that there was a reasonable possibility that his disability was causally connected to a work-related accident. In the absence of manifest error, the trial court’s findings of fact will not be disturbed on appellate review. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff-appellant, Lionel Sims.
AFFIRMED.

. We note the recent decision by our supreme court in Mott v. Wal-Mart Store, Inc., 486 So.2d 112 (La.1986). However, we do not find same controlling in the present case since the evidence and medical testimony adduced in this cause is clearly distinguishable from the evidence and medical testimony found in Mott.