FRUGÉ, Judge.
This is a workmen’s compensation suit brought by Leon G. Smith for benefits for total and permanent disability resulting from an accident of August 19, 1970, while he was in the employ of C-Services, Inc. The defendant, Travelers Insurance Company, the compensation insurer of C-Services, Inc., answered the suit denying that plaintiff was totally disabled but admitting that he was partially disabled and stating that plaintiff was receiving benefits for his partial disability. At the time of the accident, plaintiff’s average weekly wages amounted to $208.00. Plaintiff was paid compensation at the maximum rate of $49.-00 per week from the day of the accident until June 24, 1971, at which time his benefits were reduced to $27.04 per week.
The nature of plaintiff’s disabling accident was a gasoline pump explosion'which caused first, second, and third degree burns to the plaintiff’s hands, chest, and *623 legs. Plaintiff was employed as a roughneck at this time. The trial judge awarded plaintiff the sum of $27.04 per week for a period of 500 weeks on the basis of 20% disability in both hands, and $6.76 per week for 175 weeks for 5% disability in his right leg. Defendant appealed asking for a reduction of the award on the hand disability to 300 weeks, and a disallowance of the leg disability award. Plaintiff answered asking for a declaration of total and permanent disability. We amend to award compensation on the basis of total and permanent disability.
At the time of his injury, plaintiff was employed as a motorman-roughneck by the defendant. In order to properly frame the lay and medical evaluations which are to follow, we would first like to dispose of the issue of plaintiff’s status as a skilled or unskilled laborer.
The characterization of a person as skilled or unskilled should not depend exclusively upon the classification or title of his employment or job. It is true that in many types of employment, the mere qualification of a person as fit to do the work would mean that he would have to possess a certain minimum amount of skill and would therefore have to be classified as a skilled worker. However, there are other jobs such as a roughneck, wherein the mere classification as such may denote no more than physical prowess. Still, the duties of a roughneck, as established in many cases, are so broad and diverse that if a person is capable, through training or experience, of performing substantially all of these duties, he must be considered a skilled worker.
“The transcript of testimony is replete with evidence to substantiate a finding that the work of a roughneck involves technical skill.” Sykes v. Stout Drilling Company, 124 So.2d 200 (La.App. 2nd Cir., 1960).
Therefore, within the classification of “roughneck”, there may be two workers, one young and inexperienced, and the other seasoned and capable of all forms of roughneck work. To give both the same skill classification would be very unfair. Each case must stand on its own peculiar facts. Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1 (1953); Malone, Louisiana Workmen’s Compensation (1964 pocket part, Chapter 13, § 275, p. 147).
We believe that in situations dealing with roughnecks, no hard and fast rule may be made as to their classification as unskilled or skilled laborers and each case must be determined on its facts. However, the jurisprudence has established that the capability to perform substantially all of the duties of a roughneck is a skilled not an unskilled capability. Sykes v. Stout Drilling Company, supra; Powell v. Travelers Insurance Company, 117 So.2d 610 (La.App. 2nd Cir., 1960). See also: Smith v. Travelers Insurance Company, 174 So.2d 241, 245 (La.App. 3rd Cir., 1965).
A reading of the record (elaborated upon later) discloses that plaintiff, in this case, has been a roughneck for some time and at the time of his accident, was capable of performing most, if not all, of the traditional duties of roughnecks, as well as the more demanding tasks of motorman. Therefore, we believe that the plaintiff was a skilled laborer. The next question is whether plaintiff’s disability is such that he cannot perform either his old work or work of a similar nature.
Plaintiff was seen by two different plastic surgeons after his accident, but both of them saw him only for evaluation purposes. Each saw him twice.
The first of these doctors was Dr. Richard W. Hughes, who testified by way of deposition. He stated that, although plaintiff was significantly scarred about the hands and on the right leg, he was capable of returning to his job as a roughneck. However, this doctor admitted that the extent of his knowledge of the duties of a roughneck stemmed from some experience *624 he had driving a truck for Halliburton. He rated plaintiff’s disability at 5% of the right hand and 10% of the left hand.
The second plastic surgeon to testify by way of deposition was Dr. Darrell L. Henderson. He stated that the scars which plaintiff has on his hands are “ . . . . markedly disfiguring as well as causing a functional disability . . . . ” He estimated the disability in each hand and in the right leg to be a 20% permanent partial disability. Dr. Henderson, with a much more detailed appreciation of the duties of a roughneck, stated that due to the scars on plaintiff’s hands, he would be much more likely to injure himself especially in climbing ladders where he could fall and injure himself. Furthermore, due to the tightness of the skin around the scars, they could easily split open resulting in infection and ulceration. The doctor likened the loss of sensation in plaintiff’s hands to that of a leper and said that as a result plaintiff could burn or cut himself without knowing it and ultimately “wear out” his hand prematurely. Plaintiff would be working at a disability as compared to other workers, would be a hazard to himself, and a hazard and threat to his co-employees due to an increased possibility that he would lose control over objects and drop them. The doctor felt that surgery or certain injections could possibly offer some reduction of the disability in his hand, but there was no real certainty that either procedure would work. The doctor did not believe that the 20% disability in plaintiff’s leg would be capable of reduction.
The only doctor called at the trial was the treating physician, Dr. Lester A. Ance-let. He rated the permanent partial disability of both of plaintiff’s hands at 20%, with the strength in his hands being “ . . • . quite less than normal.” He gave no percentage in relation to plaintiff’s leg. The doctor stated that plaintiff had reached maximum cure and nothing could be done for him surgically. He stated that he would not allow plaintiff to climb higher than any danger point on a ladder due to the loss of strength in his hands.
When questioned as to whether he would recommend that plaintiff return to his old job as a roughneck, the doctor freely admitted that he was unqualified to give an answer because he did not know what the-work entailed. When the duties were explained to him, he stated that plaintiff was disabled from performing such work.
Plaintiff testified that on the day of the accident, he was working as a motorman and that in such a capacity, he was respon: sible for the operation of a water pump. This entailed such things as repair and adjustment of the machine, and it was while he was fueling the motor that the explosion and fire occurred. He stated that he also performed duties as a roughneck on the floor, and that as such he had to do frequent climbing in order to assist the derrickman in erecting the derrick and adjusting and repairing cables thereon. The repairing of such cables often necessitated climbing to heights of 130 feet. As opposed to this, the duties of a roustabout, which is plaintiff’s present position with another company, consists of cleaning pipes, digging ditches, and carrying boards to make board-roads. Roustabouts are not required to do any climbing. However, plaintiff stated that he could not even perform some of his duties as a roustabout. He could not clean pipes because the chemicals used hurt his scars, and he could not “swamp” cable onto trucks because it hurt his hands. Furthermore, he frequently drops boards and pipes because his hands are weak. He has never had a prior compensation claim.
Next called was Mr. Ronnie D. Daley, who was a co-worker of plaintiff’s at the time of the accident. He testified that at this time plaintiff was a motorman as opposed to a floorman roughneck, and that the motorman was paid $3.35 an hour, as compared to $3.25 an hour for a floorman. Plaintiff also helped out on the floor. Mr. Daley stated that a motorman had more physical work than a roughneck due to the *625 fact that he had to work on his motors. Also, a motorman may have to climb the entire height of the derrick several times a day to assist the derrickman. (Both the derrickman and motorman were paid the same wage).
On the other hand, a roustabout does only odd jobs, pipe fitting, and board runs.
Next called was Mr. Preston A. Miller. He was a driller in charge of hiring and firing for defendant at the time of plaintiff’s injury. He testified that at the time of his accident, plaintiff was employed as a motorman with all the duties of a roughneck, but with added responsibility. He stated that as a motorman-roughneck, plaintiff would be required to do a lot of climbing on the derrick to change light bulbs, and rig mudlines and cables. Furthermore, as motorman, plaintiff would have to assist in erecting the derrick. He stated that he would not hire plaintiff, in his present condition, to do his old job because plaintiff was not capable of performing those tasks.
He relegated the status of a roustabout to that of a helper for the roughnecks.
Plaintiff’s son, Stephen J. Smith, testified that he presently works as a roustabout with his father, and that his father is not capable of performing all the tasks required of him because he frequently drops pipe due to his poor grip.
Considering all the foregoing testimony, we find that plaintiff, with extensive experience, was employed as a skilled worker in the capacity of a motorman-roughneck at the time of his accident. Due to this accident, he is no longer capable of performing such tasks and this disability will last to a greater or lesser extent permanently. Presently, plaintiff can perform some but not all of the tasks of a roustabout.
We believe it is quite evident that the duties that plaintiff is presently capable of performing are not even vaguely similar to those he performed prior to the accident. Added proof of this extreme differentiation in duties and services performed is offered by the fact that prior to the accident, plaintiff earned $208.00 per week and he presently earns $75.00 per week. Plaintiff is disabled from performing work of any reasonable character within the intendment of the workmen’s compensation statute, i. e., he is disabled from performing work of the “same or similar description, kind or character .... to that which (he) was accustomed to perform .... (and) was undertaking when the injury occurred.” Brannon v. Zurich General Accident & Liability Ins. Co., supra.
Accordingly, we find that plaintiff is totally and permanently disabled and entitled to be compensated at the rate of $49.00 per week for a period not to exceed 500 weeks, subject to a credit on behalf of defendant for all payments previously made. Defendant-appellant is assessed all costs in this court and the trial court.
Amended and affirmed.