324 So.2d 895 (1975)
Joseph R. DESHOTELS, Plaintiff-Appellee,
v.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant-Appellant.
No. 5275.
Court of Appeal of Louisiana, Third Circuit.
December 24, 1975.
Dissenting Opinion January 2, 1976.
Rehearing Denied January 28, 1976.
Writ Refused March 19, 1976.
*896 Allen, Gooch & Bourgeois by Kenneth Cole, Lafayette, for defendant-appellant.
Devillier, Ardoin & Morrow by J. Michael Morrow, Eunice, for plaintiff-appellee.
Before WATSON, HUMPHRIES and PETERS, Judges.
PETERS, Judge ad hoc.
This is an appeal from a judgment awarding plaintiff the sum of $49.00 per week in workmen's compensation benefits for total and permanent disability. Plaintiff answered the appeal asking for an award of past and future medical expenses and for attorney's fees.
Plaintiff was employed by Evangeline Timber Company, primarily to make fence posts. Plaintiff cut trees ranging from two and one-half to six inches in diameter, trimmed the branches and cut the trees into sections using a chain saw. When the cutting was done, he loaded the sections on to a one and one-half ton truck and drove to a creosote plant several miles away where the sections were treated to be used as fence posts.
At the time of the accident, plaintiff was rebuilding a fence for Evangeline. This *897 was a job he had never done for Evangeline before. Plaintiff broke off a vine, clinging to the fence, which struck him in the right eye. It is undisputed that plaintiff lost all vision in his right eye as a result of the accident. The medical evidence clearly shows plaintiff has suffered a loss in range of vision and a loss of depth perception due to the loss of vision in the right eye.
The trial judge found plaintiff was disabled from doing the same work or work of a reasonably similar character as that which he was performing at the time of the accident. This holding by the trial judge indicates that he found the plaintiff to be at least a semi-skilled worker. We are unable to find any error in this conclusion. Although plaintiff had been working for Evangeline only one or two weeks at the time of the accident, he had been employed by Evangeline on at least one other occasion to do similar work. He was sufficiently knowledgeable about his job duties that his employer sent him to work without supervision. He was entrusted with driving a truck. Mr. Richard Allen Waltrip, a timber buyer and pulpwood procurer, testified he had employees doing the same type of work plaintiff was doing for Evangeline and he would not hire a man to do this type of work unless that man had some experience in the logging business. While it is probably true that no special skill is required to operate a chain saw or to drive a one and one-half ton truck, the plaintiff's experience in performing, and ability to perform well, all his job tasks make him at least a semi-skilled worker. Smith v. Traveler's Insurance Company (La.App.3rd Cir., 1972), 267 So.2d 622.
The trial judge's conclusion that plaintiff was disabled from performing the same or reasonably similar work as he was performing when injured is correct. The medical evidence clearly shows plaintiff has suffered a loss in range of vision and depth perception. Plaintiff testified he now has trouble staying in his lane of traffic when driving. He further stated he would have trouble working among tree branches and stumps because he cannot estimate properly the height of branches and stumps. Mr. Waltrip's testimony is highly relevant because it indicates plaintiff is unable, due to his disability, to compete in the labor market with able-bodied workers with similar skills. According to Futrell v. Hartford Accident and Indemnity Company, 276 So.2d 271 (La., 1973), the test for disability is whether the injury has substantially decreased claimant's ability to compete with able-bodied workers with similar skills in the general labor market. Therefore, even if plaintiff in the instant case were able to perform the same job duties he was performing at the time of the accident, he is disabled under LSA-R.S. 23:1221 if he is unable to compete with able bodied workers for such a job. The only evidence tending to show plaintiff's position in the labor market is the testimony of Mr. Waltrip, who testified unequivocably that he would not hire a one-eyed man to do the type of work plaintiff was doing.
We therefore affirm the trial court's award of benefits for permanent total disability.
We find no merit in plaintiff's contention that the trial court erred in not awarding plaintiff past and future medical expenses. It was stipulated by counsel at trial that medical payments in the amount of $3,466.62 had been paid and there were no medical bills outstanding at the time of trial; it is therefore apparent plaintiff was entitled to no award for past medical expenses. Plaintiff also is not entitled to an award for future medical expenses. There is no liability for medical expenses until they are incurred. Reed v. Employer's Mutual Liability Insurance Company of Wisconsin (La.App. 2nd Cir., 1974), 303 So.2d 506; Manuel v. Jennings Lumber Company (La.App. 3rd Cir., 1971), 248 So.2d 908. Furthermore, the right to assert a claim for medical expenses that *898 arise in the future is always reserved to the plaintiff and need not be specifically so reserved in the judgment. Reed v. Employer's Mutual Liability Insurance Company of Wisconsin, supra; Welch v. Clemons Brothers Lumber Company, Inc. (La.App. 1st Cir., 1972), 262 So.2d 79.
Plaintiff is not entitled to penalties and attorney's fees because defendant's refusal to pay benefits was not arbitrary and capricious. There apparently was an honest dispute between plaintiff and defendant concerning whether plaintiff was entitled to benefits for permanent disability or merely to benefits for 100 weeks under the schedule and defendant did voluntarily pay plaintiff $49.00 per week for 100 weeks under the schedule.
All costs in this court and in the court below are to be paid by defendant-appellant.
Affirmed.
HUMPHRIES, J., dissents and assigns written reasons.
HUMPHRIES, Judge (dissenting).
I find that I am not in agreement with the majority opinion in affirming the decision of the trial court awarding permanent and total disability for the loss of an eye.
I agree with the majority and the trial judge that the plaintiff has lost all vision in his right eye.
The majority finds that the plaintiff is totally disabled from performing the same or reasonably similar work as he was performing when injured and that the plaintiff's loss of vision in his right eye has substantially decreased his ability to compete with able bodied workers with similar skills in the general labor market. I submit that there is no evidence in the record to support these two findings.
Whether the plaintiff can perform work of similar character to that he was performing at the time of the accident is a legal question that addresses itself to the trial judge. This opinion of course must be based upon sufficient, competent evidence.
Two doctors testified by depositions. The plaintiff called Dr. Merrick J. Wyble and the defendant called Dr. Larry E. Baker. Dr. Wyble was the attending physician. He stated that he felt that the plaintiff should not return to work in the timber business and do different jobs as driving a tractor, cutting timber and working around the timber yard. This is not what the plaintiff was doing. He stated that the plaintiff was employed with the timber company and working in a hazardous condition as manifested by the fact that he got injured and lost an eye. He stated that if the plaintiff returned to work he could place "himself and others in a very bad situation, that he could either injure himself of injure his eye or injure someone else, because he only had one eye, which would be true of any one-eyed patient." The doctor, surprisingly, expressed an opinion on the plaintiff's ability to procure employment. He stated "I think with the employment situation now, I don't think Mr. Deshotels would be hired. I think that here is a man that is unskilled primarily, and would have to more or less work at a hazardous type situation to be hired, and I don't think he could compete in the job market." There is nothing in the record to qualify the doctor as an expert in employment or the labor market. No other person who had any knowledge about the labor market or the employment of handicapped persons testified. It is hard to believe that the doctor, who is an expert in the medical field, would express an opinion in the field of the labor market. Also he has disqualified himself from expressing such an opinion by his own statement. He stated that an unskilled person would have to engage in hazardous type of employment. This is the first time that I have in all of my experience heard such an opinion as this expressed. One only has to look around to see that this opinion is entirely *899 false as unskilled workers fill positions in non-hazardous trades. Then inconsistent with his other inconsistent testimony the doctor stated that the plaintiff could return to his usual employment of farming and should do so.
This doctor was just not familiar with the facts of this man's employment or the manner in which he was injured, even though he was the treating physician. He stated that the plaintiff was injured when a limb struck him while he was on a tractor. He was asked and testified (Tr. 44).
"Q. I believe you stated that you are not sure of the exact duties which Mr. Deshotels performed for Evangeline Timber Company, is that correct?
A. No. He mentioned to me that the limb that hit him when he was on a tractor and that he did other types of duties for them and I never did really go into great detail about the different duties other than that the original duty was hazardous enough to cause him to lose an eye."
When this doctor was asked if he felt that the plaintiff was disabled in any way from pursuing his occupation as a potato farmer he replied:
"I think Mr. Deshotels can farm as a potato farmer. I think that in his daily job as a potato farmer, or any kind of farmer, where he has got equipment to handle and potentially dangerous equipment, doing repair work on machines, lifting crates about his head and placing them in dangerous positions, and everything else, that his job is certainly made a little bit more difficult with one eye, but that because of necessity he has to do it."
Dr. Baker examined the plaintiff and found that he has lost the sight in his eye. Dr. Baker was asked a hypothetical question which included all of the duties that Mr. Deshotels did for his employer and he stated that he felt that the plaintiff could perform that type of employment.
The only other person who sought to enlighten the court regarding the claimant's disability was one Richard Allen Waltrip. Mr. Waltrip is in the pulpwood business. He is not in the same type of business that Evangeline Timber is in. He testified that he had a couple of fellows down in South Louisiana that were in the fence post business that sold him some fence posts. Mr. Waltrip was not an expert in the labor market or in the ability of handicapped people to perform various types of employment. Mr. Waltrip stated that he would not hire the plaintiff. Mr. Waltrip has never had any experience with an employee with only one eye. It is obvious that Mr. Waltrip got to court because of his friendship with the plaintiff or someone connected with the plaintiff. Mr. Waltrip was not in anywise qualified to express an opinion as to the plaintiff's ability to perform any labor. Mr. Waltrip has never even worked around a laborer who had only one eye. He has no knowledge of the ability of Mr. Deshotels to perform the duties that he was performing with Evangeline Timber Company. His testimony is utterly useless and it is error to accept his testimony as proof of anything.
It must be kept in mind that the plaintiff is principally a potato farmer. In the off season he works for Evangeline Timber Company. His duties consist of using a chain saw to cut trees of 2 and ½ to 6 inches in diameter and then trim the limbs and cut the trunk into lengths of approximately 6 to 8 feet, place them on a ton and a half truck and drive the truck to the creosote plant where they are unloaded by other employees. At the time that the plaintiff was injured he was in the process of rebuilding a fence. He was digging the holes with a power auger, placing the *900 fence posts in the holes and stringing wire to the fence posts.
Plaintiff's duties as a farmer and his duties with Evangeline Timber are exactly the same. If he can perform the duties in one field he can perform the duties in the other.
The plaintiff was paid compensation for 100 weeks. Certainly the Legislature must have realized that an employee with a loss of one eye will have a little more difficulty performing his duties and a little more difficulty in procuring employment. Presumably, because of this, the Legislature provided for a payment of 100 weeks to any employee who loses the sight of one eye. This payment is due the employee without regard to any resultant disability.
In Green v. Coal Operators Casualty Company, 84 So.2d 843 (La.App., 2d Cir. 1956) the Court held that a pulpwood employee (employment that is more hazardous and strenuous than that of the plaintiff) was only entitled to 100 weeks for the loss of an eye. In Franklin v. Cashio, 111 So.2d 536 (La.App., 1st Cir. 1959) the Court held that a swamper or logger who lost the sight of an eye that was subsequently removed, was not totally disabled and awarded 100 weeks. In Anderson v. Bayham et al., 107 So.2d 531 (La.App., 1st Cir. 1958) the Court awarded 100 weeks to a logger for the loss of an eye. The Court reversed an award of total disability granted by the trial judge. Anderson was a logger and it was necessary for him to use axes and saws to cut down trees and trim branches. He did most of his work in swampy areas. One of the witnesses for Anderson was a logger who had lost the sight of one eye and testified that he had been working for 15 years with that condition and worked as well as a worker with both eyes.
This writer recognizes that there are instances, perhaps many, where the loss of one eye would render a workman totally disabled but this is not one of those instances.
I would reverse the judgment of the trial court and dismiss the plaintiff's demands at his costs as he was paid 100 weeks of workmen's compensation benefits prior to the institution of this action.