347 So.2d 306 (1977)
Mrs. Myrl DRAGON
v.
ORLEANS PARISH SCHOOL BOARD.
No. 8549.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1977.
*307 Jesse S. Gullot, Emile W. Schneider, New Orleans, for plaintiff-appellee.
Polack, Rosenberg, Rittenberg & Endom, Franklin V. Endom, Jr., New Orleans, for defendant-appellant.
Before SAMUEL, STOULIG and MORIAL, JJ.
MORIAL, Judge.
Orleans Parish School Board (OPSB) appeals from a judgment awarding plaintiff Myrl Dragon workmen's compensation benefits of $65.00 per week for 500 weeks for total and permanent disability.
Plaintiff was employed as a subcustodian for the OPSB. Plaintiff alleged that she suffered a ruptured intervertebral disc as the result of a work-related accident. On November 2, 1972, plaintiff slipped on water on the school cafeteria floor and allegedly sustained injuries to her right leg, hip and back. Plaintiff filed an accident report and was sent to Dr. Axelrod by the OPSB. Plaintiff was treated for a sprain of her right ankle and was released after three weeks. Early in 1973 after a snowfall in the New Orleans area, plaintiff slipped and twisted her back while clearing snow off a ramp at the school. In March 1973 plaintiff again hurt her back and arm in attempting to close a school window. Mr. Earl Ryan, Sr., plaintiff's supervisor witnessed the two latter incidents and was aware of the fact that plaintiff experienced pain in her back as a result of the accidents. However, an accident report was not made on either occurrence. Plaintiff continually suffered from pain in her lower back after these incidents and sought medical care from several physicians and a chiropractor. Several of the physicians who examined plaintiff were of the opinion that she had a herniated disc. Plaintiff resigned from her job on October 8, 1973 claiming that the pain in her back and leg prevented her from working any longer. Plaintiff was referred to Touro Infirmary. She was operated on for her back problem in May 1974. At the time of trial plaintiff had not yet been discharged by her doctor. Plaintiff wears a brace and claims she can no longer stoop or sweep.
Mrs. Dragon testified that her back problems began with the November 2, 1972 cafeteria fall. She stated that her pain increased following her fall on the ramp and the window closing incident. She testified that she complained to her custodian and co-employees. She said she continued to work because she needed the work to support herself. Plaintiff stated that after the operation she was unable to work because she could no longer sweep or stoop and that custodial work was the type only type of work she could do.
Mr. Earl Ryan, the head custodian at the school, testified that he was present during *308 the ramp and window incident although he was not sure of the dates of the incidents. He explained that an accident report had not been made because plaintiff believed that she had merely aggravated the back condition sustained in the November cafeteria fall. He believed that plaintiff had only injured her hand in attempting to close the window. He did recall plaintiff complaining about her back after slipping on the ramp. He stated that plaintiff was a good worker and insisted on working even though she was in pain.
Plaintiff saw four physicians and a chiropractor during the period of November 1972 through January 1974. Dr. Charles Peterson had treated plaintiff for a hypertension condition in November and December 1971. In April 1972 he treated plaintiff for tenderness of the right hip and thigh which he diagnosed as an arthritic condition. He stated that plaintiff did not complain of any back trouble during that period. However, he testified that when she returned in February 1973 she complained of low back pain but was not told of any falls experienced by plaintiff since her previous visit. He felt her pain was caused by arthritis. He saw plaintiff four times between May and September. He noted that plaintiff's pain continued and that she had developed muscle spasms in her back by September. He did not believe that she exhibited the symptoms of a herniated disc syndrome. He was of the opinion that if plaintiff did fall she probably aggravated a pre-existing arthritic condition.
Dr. A. J. Axelrod, the school board physician testified that he treated plaintiff for a sprained ankle on November 3, 1972. She was discharged by his associate on November 16, 1973. He did not take any X-rays of her back nor did he treat her for a back problem.
Dr. Marilyn Panger, a chiropractor saw plaintiff twenty-one times between September 22 and October 22, 1973. Her history on Mrs. Dragon showed that she had experienced falls in the yard and in the cafeteria. Dr. Panger took X-rays and found plaintiff to be suffering from muscle spasms in her lower back. She felt plaintiff was in need of orthopedic care. She wrote plaintiff a note stating that she was unable to continue her duties at the school.
Dr. George Battalora, an orthopedic surgeon, saw plaintiff on November 2, 1973. His examination of plaintiff's back revealed a low lumbar disc syndrome and a L4 disc herniation. He advised a myelogram and felt plaintiff was not able to work.
Dr. Russel Grunsten first examined plaintiff on March 19, 1973. Plaintiff complained of low back discomfort. He stated in his history on plaintiff that she had told him that her pain began when she was cleaning snow off of her car windshield. Plaintiff saw the doctor several times in March and April. She received injections to relieve the pain in her back. On a May 7th visit, Dr. Grunsten found plaintiff was exhibiting symptoms of disc degeneration. Plaintiff returned in June while on vacation from work and was advised to maintain a bed resting status. Plaintiff returned to see Dr. Grunsten on October 23, 1973 and reported a flare up of pain in her right buttocks and lower extremity. The doctor noted evidence of disc herniation and referred plaintiff to Touro Infirmary. Plaintiff returned to see him on January 22, 1974 and made the same medical findings. Plaintiff asked him at that time whether or not her November 1972 cafeteria fall could be related to her back condition. The doctor stated that he could not correlate the symptoms with a specific injury that occurred that long ago.
Defendant contends that plaintiff failed to meet her burden of proving that she sustained a work-related injury which caused the disc herniation in her back. Defendant argues that a non-work-related incident may have caused her injury.
Defendant also argues that the trial judge improperly set the compensation rate as it was scheduled at the time plaintiff left her employment rather than the rate as scheduled at the time of the occurrence of the accidents.
Defendant's final argument is that the trial court erred in taxing costs and expert *309 fees other than the stenographer's costs in violation of LSA-R.S. 13:4521.
Plaintiff argues that Mrs. Dragon's testimony which was corroborated by Mr. Ryan, the supervisor, established the occurrence of the three work-related incidents which resulted in the injury to her back. Plaintiff points out that the trier of fact accepted plaintiff's proof and that the record does not disclose a causative event off the job. Plaintiff contends that it was within the discretion of the trial judge to set the rate of compensation as it was statutorily scheduled at the time she left the job. Plaintiff also argues that the school board should be responsible for the costs and attorney's fees because they refused to pay her compensation to which she was due.
We recognize that plaintiff has the burden of showing by a preponderance of the evidence, just as in any other case, that the accident and disability were workconnected. Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963). However, the testimony of an employee alone may establish a work-related disabling accident where such testimony is corroborated by other credible evidence. Wright v. Red Ball Motor Freight Inc., 315 So.2d 344 (La.App. 1 Cir. 1975). We find that Mrs. Dragon's testimony as corroborated by Mr. Ryan established the occurrence of the three work-related incidents. The more troublesome issue is whether or not plaintiff suffered a herniated disc as a result of these accidents. We admit that the medical testimony as to the cause of plaintiff's injury is sparse and conflicting. However, the record does reflect that plaintiff was not treated for a back ailment prior to her fall in November 1972. We find that there is sufficient evidence in the record to support the conclusion of the trial judge that the injury suffered by plaintiff was work-related. It is well established that questions of a work-related accident and causal connection between the accident and disability are factual in nature and will not be set aside in the absence of manifest error. Todero v. Great Atlantic and Pacific Tea Company, 343 So.2d 388 (La.App. 4 Cir. 1977).
We do find that the trial court erred in setting the rate of compensation as it was set at the time plaintiff left the job. Plaintiff is entitled to collect compensation at the rate as it was statutorily fixed at the time the accidents occurred. Pender v. Southern Farm Bureau Casualty Insurance Company, 280 So.2d 599 (La.App. 3 Cir. 1973).
With the exception of stenographers' costs for taking testimony, plaintiff is not entitled to collect expert fees or court costs from the defendant school board. See LSA-R.S. 13:4521; Jenkins v. Orleans Parish School Board, 310 So.2d 831 (1975).
For the foregoing reasons, the judgment of the district court is amended to reduce the rate of compensation to $49.00 per week for 500 weeks and to exclude the award of expert fees and costs (other than stenographers' costs for taking testimony) against defendant school board, and, as amended, the judgment of the district court is affirmed.
AMENDED AND AFFIRMED.