516 So.2d 139 (1987)
Ana HERNANDEZ
v.
F.W. WOOLWORTH COMPANY and Travelers Insurance Company.
No. CA 7080.
Court of Appeal of Louisiana, Fourth Circuit.
November 3, 1987.
Writ Denied December 18, 1987.
*140 Marvin C. Grodsky, New Orleans, for appellant.
Michael F. Grennan, New Orleans, for appellees.
Before GULOTTA and CIACCIO, JJ., and CADE, J. Pro Tem.
CIACCIO, Judge.
Plaintiff, Ana Hernandez, injured her back while in the course and scope of her employment with defendant, F.W. Woolworth Company. She sued her employer and their insurer, Travelers Insurance Company, seeking compensation benefits for total and permanent disability. Plaintiff also sought damages and attorney fees resulting from the defendant's alleged arbitrary and capricious failure to pay her compensation. Additionally, she sought damages for the unlawful termination of her employment.
The case was tried before the Commissioner and the following findings were made:

FINDINGS
After hearing the testimony of the witnesses together with the various exhibits of the parties, it is the finding of this Court that petitioner did in fact sustain an injury on October 8, 1982, while in the course and scope of her employment with defendant Woolworth.
It is further a finding of this Court that, based on the testimony of the doctors, petitioner can now perform the job of cashier and other work of a sedentary nature. It is thus the Court's finding that petitioner is not permanently totally disabled.
Specifically, the Court finds that petitioner sustained a trauma that aggravated her preexisting back injury. As a result, the court finds that plaintiff was temporarily totally disabled.
As far as the question of whether there was a wrongful termination of petitioner, the finding of this Court is that there was some confusion regarding the cause of her problem, which confusion could be attributed to a language problem, or to the fact that petitioner had *141 back problems prior to the incident in question here. Accordingly, the finding of the court is that there was not a wrongful firingactionable under R.S. 23:1361.
This position is supported by defendant Woolworth's initial attempt to extend to petitioner a leave of absence to protect her benefits. Nevertheless, the Court is satisfied that petitioner contacted defendant to give notice that she had incurred an injury and would not be available for work the following day.
At the time of trial, the benefits due petitioner were current, (it was stipulated that plaintiff earned $3.65 hourly and her weekly wage was $146.00), and this Court is of the opinion that to the extent penalties or legal fees should have been imposed on defendant herein, they have been by the other Courts that previously passed on those issues.
Though it is difficult to say precisely when petitioner reached the point that she could return to work (the doctors disagreed), the court is satisfied that plaintiff is now able to return to work as a cashier.
Accordingly, defendant may cease paying petitioner compensation forthwith.
The district court adopted the findings of the Commissioner and rendered judgment in favor of the defendants and against the plaintiff, dismissing plaintiff's petition for Worker's Compensation and authorizing the defendants to cease paying compensation benefits to the plaintiff. Plaintiff filed a motion for a partial new trial which was denied. Plaintiff thereafter appealed the trial court judgment, alleging five assignments of error. We reverse the judgment of the trial court. As a result of our decision to reverse the judgment of the trial court, issues numbers 1, 3 and 5, as raised in appellant's brief, are rendered moot. Accordingly, we discuss only those issues presented in assignments of error numbers 2 and 4.
Appellant in her second assignment of error contends that the trial court failed to render the proper judgment and remedy under the law. She contends that under the law as it existed at the time of her injury she would be entitled to compensation either "during the period of such disability" or "not beyond a maximum of four hundred fifty weeks". Pre-1983 version, La.R.S. 23:1221(1), (3). She also contends that the failure of the Commissioner to provide for her continued medical expense was error.
The record reveals the following facts concerning the plaintiff's condition:
Plaintiff was injured October 8, 1982. Thereafter she was seen by Dr. Wayne McClendon, Dr. Stuart Phillips and Dr. James LaBorde.
Dr. Wayne McClendon, a chiropracter, saw the plaintiff regularly before and after her accident. According to Dr. McClendon, his initial diagnosis of plaintiff's problems before the accident was that she had a lumbo sacroiliac sprain and misalignment. The condition caused plaintiff to experience trouble in the hip area and it also caused low back pain. This was plaintiff's condition through January 1982. On October 11th plaintiff visited Dr. McClendon and she was suffering severe low back pain which radiated into her leg. Dr. McClendon stated that this condition could be caused from a herniation of the lumbar disc or a misalignment of the vertebra which was so severe that it compressed the nerve root. He attributed this condition to the plaintiff's work related accident. His diagnosis remained the same throughout and even as recently as five days before this witness testified.
Dr. Stuart Phillips, an orthopedist, first saw the plaintiff one year following her accident. He treated her from October 10, 1983 through June, 1985. Dr. Phillips examined the plaintiff on October 10, 1983 and found she was a 35 year old female, weighing 136 pounds and she was 5'1" tall. She walked without a limp. She was sway backed. She could not bend to reach her toes and her straight leg raises were limited by tight hamstrings. A neurological exam of the lower extremities was normal. The x-ray revealed a S shape curve attributable to a growth abnormality. There was a decrease in the height of the lumbosacral *142 vertebra and a disc below this area. Plaintiff also evidenced an arthritic condition in her back.
The plaintiff's history, as revealed to Dr. Phillips, evidenced a job related injury suffered one year before this visit. In attempting to lift a heavy object while actively employed by F.W. Woolworth, Mrs. Hernandez hurt her back and suffered pain in her leg associated with paresthesis.
Dr. Phillips diagnosed the plaintiff's condition as a lumbar herniated nucleous pulposis. He found that her work related accident aggravated her prior weakened back. He recommended a thermogram and conservative treatment. The tests performed on plaintiff revealed a narrowed disc interspace resulting from wear and tear and arthritis. According to Dr. Phillips, a disc will degenerate, wear out, herniate and then get smaller. The test suggested that the plaintiff's injuries were in the L4-5 and 3-4 areas. Dr. Phillips prescribed exercise and medication consisting of Nalfon, an aspirin derivative, Vicodin, a non-narcotic pain reliever.
On November 28, 1983 plaintiff visited Dr. Phillips. She complained of dizziness and medicine was prescribed for her. Plaintiff was told to limit her activities because Dr. Phillips felt her condition was not likely to change.
On April 23, 1984 the plaintiff's condition was found to be unchanged. She was told she was not to engage in heavy work. She was found not to be a surgical candidate.
On October 11, 1984 plaintiff again visited Dr. Phillips. Her symptoms were greatly increased. She listed to one side and could not relax the muscles in her back. Dr. Phillips recommended she continue therapy.
On November 2, 1984 plaintiff's symptoms and her positive physical findings continued. She was told to wear a corset and continue taking Vicodin.
Plaintiff next visited Dr. Phillips on December 17, 1984. He found her condition unchanged. He did not think that she should undergo an operation at that time and he did not think she should return to work.
On March 1, 1984 conservative treatment was continued. Plaintiff had tried to exercise but she continued to experience pain.
On April 19, 1985 the plaintiff was seen again by Dr. Phillips. He advised Mrs. Hernandez that if her symptoms increased that they would consider surgery, but if not, she would be better advised not to undergo surgery. According to Dr. Phillips, considering his two year treatment of this patient, her condition was not going to worsen rapidly, however, her condition would also not return to normal. He felt the lifting accident had aggravated her back and this was a permanent aggravation. According to Dr. Phillips, plaintiff sustained a permanent disability attributable to her October 1982 accident. She would not become paralyzed from the condition nor would she become spontaneously well. As a result of her condition plaintiff was restricted in her activities. She should not stoop, bend nor lift heavy objects in excess of 25 pounds. She could stand but not continuously. It was recommended that she have hourly breaks from standing.
Dr. James LaBorde, an orthopedist, saw the plaintiff on two occasions. He noted that she had sustained a herniated disc in the past but her condition was improving. He did not feel surgery would be beneficial. He recommended exercise and possible cortisone injections. Dr. LaBorde felt the plaintiff could perform mild lifting, bending, stooping and she could intermittently stand and sit. He placed a 40 pound lifting restriction on the plaintiff and he was of the opinion she could return to her job as a cashier.
Jocelyn Schultz the personnel manager for F.W. Woolworth testified that on the date of the accident Mrs. Hernandez was listed as a "cashier" earning $3.65 per hour. Her duties included those of a department buyer and manager also. Mrs. Hernandez was responsible for ordering merchandise, stocking shelves, marking merchandise, waiting on customers, checking and bagging merchandise.
*143 According to Ms. Schultz, although no other employee similarly situated could work split shifts, take hourly breaks, and utilize a stool while checking customers, the defendant was willing to provide plaintiff these accommodations.
Mrs. Hernandez testified that she experiences a lot of pain and although she has been treated continually that her condition appeared worse. She stated that she took medicine between her visits to the doctor. She further stated she had not worked since her accident because of the pain she experiences. She testified that she has pain during her attempts to mop, work in her yard or lift heavy objects. She also stated that her back bothered her all the time and if she stands for too long a period of time she has pain in her left leg.
Mrs. Hernandez felt she could not return to perform her duties as a "cashier" because she could not stand for long periods, stoop, nor pick up bags. Although she was offered a restricted cashier's position she did not accept it because she did not feel she could perform the work.
The Louisiana Worker's Compensation Act as it existed at the time of plaintiff's injuries is controlling. Dragon v. Orleans Parish School Board, 347 So.2d 306 (La. App., 4th Cir., 1977) See: Walker v. Johns Manville, 311 So.2d 506 (La.App., 4th Cir., 1975); Kelly v. International Union, 386 So.2d 1060 (La.App., 3rd Cir.1980).
Prior to 1983, Louisiana Revised Statute Title 23 Section 1221 read, in pertinent part:
Sec. 1221. Temporary, permanent, or partial disability; schedule of payments
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

* * * * * *
(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1977, and not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3), and in no event shall the total number of weeks of compensation for such partial disability under this subdivision (3) be increased beyond the maximum number of weeks stated in this subdivision (3)."
The Louisiana Supreme Court in Mott v. Wal-Mart Stores, Inc., discussed the meaning of partial disability, as defined in La. Revised Statute Title 23 Section 1221. 486 So.2d 112 (La.,1986). In Mott, supra, at 115, the Court stated:
As stated, section 1221(3) provides that an employee is deemed partially disabled if he is unable to perform the duties in which he was customarily engaged when injured, or duties of the same or similar character, nature or description for *144 which he is fitted by education, training and experience. Dodd v. Nicolon Corp., 422 So.2d 398 (La.1982); Naquin v. Uniroyal, Inc., 405 So.2d 525 (La. 525 (La. 1981). The statutory definition is met, and the claimant is entitled to benefits for partial disability, if a preponderance of the evidence is in favor of finding that the claimant is unable to perform his previous job duties. Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982). As correctly stated by our brothers of the Third Circuit Court of Appeal in Clark v. Pernie Bailey Drilling Co., 445 So.2d 183 (La.App.3d Cir.1984), a worker is partially disabled when he cannot perform the duties required by her former employment, but can still do other work, or would experience substantial pain when working in her former occupation, but could perform other work without experiencing such pain.
In this case the plaintiff cannot perform the duties required by her former employment. The expert medical testimony was uniformly to the effect that the plaintiff should not engage in activities such as stooping, bending, lifting and prolonged standing. The job title which plaintiff held with defendant employer was that of "cashier" however her duties went far beyond those contemplated by this title. As indicated by the personnel manager of the defendant employer plaintiff's duties involved stocking shelves, removing heavy containers, such as boxes of rugs, from warehouse shelves and placing them on store shelves, as well as marking merchandise, checking and bagging merchandise for customers. We are convinced that plaintiff's condition precluded most, if not all of her prior employment duties. In conjunction with our determination of plaintiff's work abilities, we have viewed the video tape admitted by the defendant into evidence. The plaintiff's activities during these isolated instances are not determinative of her overall condition and they do not dissuade us in our opinion that the plaintiff is partially disabled within the meaning of the Louisiana Workman's Compensation Act. La.R.S. 23:1221(3) [pre 1983].
Likewise the fact that the defendant has agreed to provide the plaintiff a job with special accommodations (such as restricted duties, facilities for her to be seated and breaks within the work day) is not the test for determining whether plaintiff is partially disabled under the Act. The test is "the employee's ability to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he is fitted". Mott v. Wal-Mart, supra. Although, plaintiff's choice to take this accommodated position would bear upon the amount of compensation benefits she could receive, we know of no authority, nor have we been cited any, which would require plaintiff to accept this job or lose compensation benefits. Under these circumstances the trial judge was clearly wrong in failing to find that, as a result of her injuries, plaintiff was partially disabled within the meaning of La.R.S. 23:1221(3), notwithstanding the employer's offer of a specially designed "cashier" job.
Accordingly, for these reasons we find the plaintiff is partially disabled and the trial court erred in finding her to be temporarily totally disabled.
According to Joseph Albe, the insurer's claims agent in charge of the compensation department, as of the time of trial, Mrs. Hernandez had been paid 138 weeks of compensation benefits for a total of $13,900.37. It was stipulated by both sides to the litigation that plaintiff earned $146 per week when employed by the defendant.
Since we find plaintiff is partially disabled she is entitled to compensation benefits for a period not to exceed 450 weeks. In any week in which plaintiff is engaged in gainful employment for wages, she is entitled to 66 2/3% of the difference between her actual weekly wage and her prior weekly wage of $146.
We disagree with plaintiff's contention that the trial judge erred in failing to provide for her continued medical expenses. The right of a workmen's compensation claimant to assert a claim for medical expenses arising in the future is reserved *145 to the claimant and need not be specifically reserved in the judgment. Lester v. Southern Casualty Ins. Co., 466 So.2d 25 (La.1985); Deshotels v. Fidelity & Casualty Co. of New York, 324 So.2d 895 (La.App., 3rd Cir.1975) writ den. 328 So.2d 376 (La.1976).
In Lester, supra at 27, the Louisiana Supreme Court stated:
Under La.R.S. 23:1203, liability for medical expenses arises only as they are incurred. A plaintiff is not entitled to an award for future medical expenses, but the right to claim such expenses is always reserved to the plaintiff. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981); Allums v. Dixie Metals Co., 369 So.2d 1204 (La.App. 2d Cir.1979); Deshotels v. Fidelity and Casualty Co., 324 So.2d 895 (La.App. 3d Cir.1975)
The Court also held that such claims for medical expenses prescribe in ten years. La.C.C. 3544. Lester v. Southern Casualty Ins. Co., supra.
Plaintiff alleges that the trial court erred in refusing to award penalties and attorney fees for failure of the defendant to pay compensation benefits timely.
The trial court found "that to the extent penalties and legal fees should have been imposed on defendant herein, they have been by the other courts that previously passed on those issues."
It is unclear from the record whether penalties and legal fees were assessed for arbitrary and capricious termination of compensation benefits.
Louisiana Revised Statute Title 23 Section 1201.1 provides for an award of attorney fees and penalties upon the termination of benefits without probable cause:
La.R.S. 23 Sec. 1201.2. Failure to pay claims; discontinuance; attorney's fees
Any insurer liable for claims arising under thius Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims.... (Emphasis Supplied)
In this case Traveler's claim agent, Joe Albe, testified that he was responsible for the cut-off of benefits to the plaintiff. He stated that there had been information that plaintiff had resigned her position with the defendant employer. He also stated that there was a surveillence conducted of the plaintiff's activities. The results of the surveillence and the deposition of Dr. Phillips, (wherein he stated plaintiff could return to work with restrictions) prompted the witness to terminate compensation payments to the plaintiff. Additionally, with regard to the November, 1984 termination of benefits, Mr. Albe was influenced in his decision by the uniform agreement of all physicians treating plaintiff. He testified that Drs. McClendon, Phillips and LaBorde agreed that plaintiff could return to work.
Under these circumstances we conclude that there existed probable cause for the termination of benefits. As such, the defendant's actions were not arbitrary and capricious and attorney fees and penalties are not owing.
For the reasons assigned, the trial court's judgment dismissing plaintiff's petition for Worker's Compensation and ordering defendant to cease compensation payments to plaintiff is reversed.
*146 IT IS ORDERED, ADJUDGED AND DECREED That the plaintiff be and she is hereby awarded Worker's Compensation benefits to be paid by the defendant for partial disability, for a period not to exceed 450 weeks as more fully provided by La. R.S. 23:1221(3) prior to 1983, subject to a credit for the benefits already received.
In all other respects the judgment of the trial court is affirmed.
Costs of this appeal and of the trial are assessed against defendants.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.